843 F.2d 1326
 Fed. Sec. L. Rep. P 93,737
Christ ROUSSEFF, Kenneth Barneby, Vinita Robinson, William
R. Jacobson, Charles Helton, Plaintiffs-Appellees,
v.
E.F. HUTTON COMPANY, INC., a foreign corporation, Defendant-Appellant,
Anadarko Land & Exploration Co., Inc., a foreign
corporation, et al., Defendants.
Christ ROUSSEFF, Kenneth Barneby, et al., Plaintiffs-Appellees,
v.
E.F. HUTTON COMPANY, INC., a foreign corporation, Defendant-Appellant,
Andarko Land & Exploration Co., Inc., a foreign corporation,
et al., Defendants.
 Nos. 87-3290, 87-3560.
 United States Court of Appeals,
Eleventh Circuit.
 May 2, 1988.
 
 William G. Campbell, Jo Lanier Meeks, Joseph A. Ingrisano, G. Wayne Hillis, Kutak, Rock & Campbell, Atlanta, Ga., and C. Timothy Corcoran, III, Carlton, Fields, Tampa, Fla., Ward, Emmanuel, Smith & Cutler P.A., for defendant-appellant E.F. Hutton Co., Inc.
 Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Ft. Wayne, Ind., for plaintiffs-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 This is an appeal from a judgment following a jury verdict in favor of the appellee, Christ Rousseff, on his federal and state securities fraud claims. We reverse the judgment entered on the federal claim and the state common law fraud claim due to the district court's failure to submit the issue of proximate cause to the jury. We are unable to discern, however, whether or not this flaw in the trial proceedings is fatal to the claim under the antifraud provision of the Florida Investor Protection Act, Fla.Stat. Sec. 517.301. We therefore certify this question of Florida law to the Supreme Court of Florida in an opinion issued separately, 843 F.2d 1324.
 
 I. FACTS
 
 2
 Anadarko Land & Exploration Co. ("ALECO") engages in drilling and operating oil and gas wells. To finance its operations, ALECO typically establishes limited partnerships and sells limited partnership units to investors. In 1982, ALECO formed Anadarko Oil & Gas Partners 1982, Ltd. ("AOGP"), a limited partnership established to explore for natural gas in the Anadarko basin of Oklahoma. A major impetus for the program was the Swift 1-4 well located in Caddo County, Oklahoma. The appellant, E.F. Hutton, acted as the sales agent for the AOGP program.
 
 
 3
 During the summer of 1982 ALECO vice president Norman Singer worked with Hutton vice president Geoff Ramsden to put together the AOGP venture. ALECO's oil and gas experts projected that the Swift 1-4 well contained between 6 and 10 billion cubic feet (BCF) of natural gas. Hutton's expert, however, projected a 60% chance that Swift contained 6 BCF of gas and estimated that it probably contained 3.6 BCF.
 
 
 4
 Christ Rousseff was a regular Hutton client. Rousseff's account executive, Aaron Fleck, approached him to invest two million dollars in the AOGP project. While Rousseff was given ALECO's projections on the Swift well, he was not informed of the less optimistic Hutton projections. In fact, Ramsden testified that it was Hutton's policy not to disclose its own experts' projections to potential investors. Fleck also failed to mention that one of Hutton's experts had expressed reservations about the abilities of one of ALECO's experts. Rousseff also claims that he was not informed that one of the investors in the AOGP project was in bankruptcy, although the disclosure material indicated this.
 
 
 5
 Rousseff had some doubts about the investment, and he became concerned that the investment deal would not close before the end of 1982, which would adversely affect the important tax benefits Rousseff sought from the deal. Ultimately, Rousseff's fears were allayed when Fleck agreed to guarantee the principal of Rousseff's two million dollar investment. Fleck also obtained a two million dollar life insurance policy naming Rousseff as the beneficiary. Given these guarantees, Rousseff invested in the AOGP project. The Swift well became commercially productive, but its reserves were ultimately fixed at less than 4 BCF.
 
 
 6
 Apparently unsatisfied with his investment, Rousseff brought the present suit on September 24, 1985 against Hutton, ALECO and AOGP. He stated claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, the Florida Investor Protection Act, and the theory of common law fraud. ALECO and AOGP reached a settlement with Rousseff, but the claims against Hutton proceeded to trial. The jury's verdict upon special interrogatories favored Rousseff, and the district court entered judgment permitting Rousseff to rescind his purchase. Hutton filed a notice of appeal with this court, but the district court reserved jurisdiction to award attorneys' fees. The district court subsequently awarded Rousseff attorneys' fees and costs, and Hutton appeals that award as well.
 
 II. DISCUSSION
 A. Federal and Common Law Fraud Claims
 
 7
 The district court found that Rousseff was entitled to seek rescission of his deal with Hutton. As a result, the court concluded that Rousseff need not prove that Hutton's misconduct was the proximate cause of Rousseff's loss. Hutton was thereby precluded from showing that the decline in value of Rousseff's investment was caused by market conditions rather than by any factor relating to Hutton's alleged misconduct. The issue of proximate cause was not submitted to the jury. Rousseff argues that this is appropriate in an action for rescission. Insofar as this case involves claims under the federal securities law or the theory of common law fraud, we disagree.
 
 
 8
 While the case law suggests that rescission may be an available remedy in some actions under the federal securities law, see Randall v. Loftsgaarden, 478 U.S. 647, 106 S.Ct. 3143, 3152-53, 92 L.Ed.2d 525 (1986); Huddleston v. Herman & MacLean, 640 F.2d 534, 554 (5th Cir. Unit A 1981), aff'd in part, rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983),[1] the potential availability of this remedy does not alter the essential elements of the cause of action. In a section 10(b) claim, the plaintiff must establish the following: "(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury." Huddleston, 640 F.2d at 543 (footnote omitted). The proximate cause element of the claim prevents section 10(b) and Rule 10b-5 from becoming a system of investor insurance. See id. at 549; Lipton v. Documentation, Inc., 734 F.2d 740, 742 (11th Cir.1984), cert. denied, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). The same holds true with respect to the common law fraud cause of action. See Sherban v. Richardson, 445 So.2d 1147, 1148 (Fla.Dist.Ct.App.1984); Alexander/Davis Properties, Inc. v. Graham, 397 So.2d 699, 706 (Fla.Dist.Ct.App.1981).
 
 
 9
 In the present case, the district court did not require Rousseff to establish that his loss, if any, was caused by Hutton's omissions. Indeed, the court did not allow Hutton to offer proof that any loss Rousseff may have incurred was caused by general market forces and the considerable decline in the oil and gas market during the period of the investment.[2] The court thus removed an essential element of the federal securities law and common law fraud claims from the jury's consideration. This was error. The district court's finding that rescission was the appropriate remedy in this case does not eliminate the requirement that the plaintiff establish that his loss was proximately caused by the defendant's misconduct.[3] Because an essential element of the case was not submitted to the jury, the judgment may not stand insofar as it was entered on the federal securities law and common law fraud claims. We therefore reverse the judgment to that extent.
 
 B. Florida Statutory Claim
 
 10
 Rousseff also stated a claim under the Florida Investor Protection Act. Under Fla.Stat. Sec. 517.301, it is unlawful to misrepresent or omit material facts in connection with the sale of a security. The exclusive remedy available to an individual injured by a violation of section Sec. 517.301 is an action for rescission. Fla.Stat. Sec. 517.211. In addition to the failure to submit the issue of proximate cause to the jury, Hutton challenges several other aspects of the trial and judgment entered in the district court. We address these other contentions only with respect to the Florida statutory claim.
 
 
 11
 Hutton first argues that there was insufficient evidence to support the jury's verdict on the issue of reliance. The evidence shows that Rousseff clearly relied significantly upon the guarantee signed by Aaron Fleck. According to Hutton, this indicates that Rousseff did not rely on the amount of reserves projected for the Swift well. We disagree. While Rousseff might not have invested in the project without the guarantee, this does not indicate that the other factors were irrelevant to his investment decision. The guarantee may have been a necessary condition to his investment, but it was not a sufficient condition. Indeed, Rousseff testified that Hutton's less optimistic projections would have been very important in making his investment decision. The jury obviously credited this testimony, and on appeal we may not second guess the jury's assessment of his credibility. Given Rousseff's testimony that he would have considered the omitted information, which bore directly on the value of the investment, there was sufficient evidence to support the jury's verdict on the issue of reliance.
 
 
 12
 Hutton also contends that the district court erred in excluding certain evidence regarding the tax benefits which Rousseff received from his investment in the AOGP project. According to Hutton, the tax benefits were relevant on the issues of reliance and damages. With respect to reliance, we agree that evidence of substantial tax benefits was relevant. Rousseff clearly hoped to reap considerable tax benefits from his investment. Despite Hutton's contention, however, the record indicates that the district court admitted evidence on Rousseff's tax motives. In fact, Rousseff testified that he hoped to deduct approximately 90% of his two million dollar investment. The district court recognized that this was relevant evidence on the issue of reliance and accordingly held it admissible. Given this evidence on Rousseff's motives, we find no error in the district court's evidentiary rulings relating to the issue of reliance.
 
 
 13
 The district court did, however, exclude certain tax forms and documents which Hutton wished to offer on the issue of damages. The court found that tax benefits were not relevant to the issue of damages where rescission is the appropriate remedy. We agree. Under federal law, tax benefits are not relevant to damages in a rescission action. Randall, 106 S.Ct. at 3153-55. The Supreme Court has noted that the recovery in rescission actions is generally taxable as ordinary income and that "[a]ny residual gains to plaintiffs thus emerge more as a function of the operation of the Internal Revenue Code's complex provisions than of an unduly generous damages standard for defrauded investors." Id. at 3154. Moreover, the court found that the deterrence of fraud on the part of tax shelter promoters would be significantly undermined if tax benefits were subtracted from securities fraud damage awards. Id.
 
 
 14
 The Supreme Court's conclusion in Randall involved the definition of the term "income received" in section 12(2) of the Securities Act of 1933. Under that provision, any "income received" on the investment must be subtracted from a damage award. The Florida provision contains precisely the same language. We conclude that the Supreme Court's reasoning is persuasive in defining the term "income received" contained in Fla.Stat. Sec. 517.211(3)(a), although we recognize that the decision is not binding with respect to Florida law. Similar provisions in at least one other state have been construed to exclude consideration of tax benefits in calculating damage awards. See Hall v. Johnston, 758 F.2d 421 (9th Cir.1985) (Oregon statute). Although the Florida courts have not yet directly addressed this question, we conclude that a Florida court would be persuaded by the reasoning outlined in Randall if presented with the question. We therefore find that the district court did not err in excluding evidence of tax benefits on the issue of damages.
 
 
 15
 Hutton's final contention is that the district court erred in instructing the jury. First, Hutton claims that the instructions improperly informed the jury that reliance was presumed in this case. This contention is focused largely upon the federal Rule 10b-5 claim and the question of whether reliance should be presumed in this case under Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). We need not address this issue of federal law because of our disposition of the federal claims above on proximate cause grounds. We deal here only with the Florida statutory claim. The jury instructions were separated along the lines of the three claims that the plaintiff asserted. With respect to the Florida statutory claim, the jury was instructed that the plaintiff bore the burden of proof on the issue of reliance. Moreover, in response to Special Interrogatory No. 5 the jury specifically found that the plaintiff had proven reliance by a preponderance of the evidence. We find that the instruction and verdict on the issue of reliance were clear and that they support the judgment entered against the defendant on the Florida statutory claim.
 
 
 16
 Hutton also challenges the instructions on the grounds that the court declined to instruct the jury that projections and opinions are not statements of fact and that they are neither true nor false. This contention is without merit. The plaintiff claimed that Hutton failed to disclose the existence of its less optimistic projections, and the jury found that the existence of those projections should have been disclosed. Whether those projections were matters of fact and whether they were true or false was not the issue. The existence of the projections was a fact and Hutton failed to disclose that fact to Rousseff. Thus, there was no error in the district court's refusal to give Hutton's requested instruction regarding opinions and projections.
 
 
 17
 Having resolved the above-described contentions regarding the Florida statutory claim, the sole remaining issue is the question concerning proximate cause. We have found that the federal and common law fraud claims fail because the district court did not submit the issue of proximate cause to the jury. We are unable, however, to determine whether proximate cause is an essential element of a claim under the Florida Investor Protection Act. In a separate opinion, we certify the question to the Supreme Court of Florida.
 
 III. CONCLUSION
 
 18
 The judgment entered upon the plaintiff's federal and common law fraud claims is REVERSED for the reasons stated above. On the Florida statutory claim, we certify the sole remaining issue to the Supreme Court of Florida in an opinion issued separately. We reserve ruling on the propriety of the attorneys' fees award pending a resolution of the certified question.
 
 
 
 [1]
 The question of the availability of the rescission remedy in federal securities actions has not been definitively resolved, and we need not address the question in this case
 
 
 [2]
 This case presents an illustration of the difference between "transaction causation" and "loss causation." The term "transaction causation" refers to the requirement that the defendant's misconduct must have caused the plaintiff to make the investment, while "loss causation" refers to the link between the defendant's misconduct and the plaintiff's economic loss. See Huddleston, 640 F.2d at 549 n. 24. In this case, the jury found that Hutton's omissions caused Rousseff to invest in the AOGP project, but it did not consider whether the investment's decline in value was related to Hutton's omissions
 
 
 [3]
 While the district court apparently found the existence of market factors in the loss unimportant in rescission cases, Huddleston suggests that consideration of such factors is of heightened significance in rescission cases. In Huddleston, 640 F.2d at 555, the court noted that the existence of other factors in the decline in value is an important matter to consider in deciding whether rescission is an appropriate remedy in a given case. As the court pointed out, rescission may be unjust where the decline was caused largely by forces unrelated to the defendant's fraud. Thus, the existence of alternative causes of the decline in value is of primary importance in rescission cases