Margaret R. BRUSCHI,
Plaintiff–Appellant,

v.

Ken BROWN, Defendant–Appellee,

Elmco, Inc., Defendant.

No. 88–5574.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

Michael R. Casey, Hatch, Mager, Casey & Beilly, Fort Lauderdale, Fla., for plaintiff-appellant.

Richard L. Allen, Wallace, Engels, Pertnoy, Martin & Solowsky, Miami, Fla., for defendant-appellee.

Before VANCE and COX, Circuit Judges, and DYER, Senior Circuit Judge.

VANCE, Circuit Judge:

This is an appeal from summary judgment for defendant entered after the district court elected to treat the defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss as a motion for summary judgment under Fed. R.Civ.P. 56. At issue is the correctness of the court's decision with respect to the plaintiff's claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. We reverse.

## I. FACTS

The amended complaint alleges and appellant has offered proof in support of the following facts. In the fall of 1981 plaintiff-appellant Margaret R. Bruschi, a high school graduate with only minimal investment experience, sought the services of a reputable investment firm to assist her in the management of the financial affairs of her and her husband. She eventually selected the brokerage firm of Dean Witter Reynolds, Inc., because of its highly-regarded investment management expertise. Defendant-appellee Ken Brown, an account executive and securities salesman at Dean Witter's branch office in Baco Raton, Florida, became Bruschi's broker and investment advisor.

Brown met with Bruschi to present his analysis of her portfolio and to recommend investment opportunities. One of these opportunities was a computer equipment sale and lease arrangement known as the Elmco investment. Brown strongly recommended the Elmco investment and described it in positive terms. He also told Bruschi that it would provide her with significant tax deductions. Brown did not disclose, however, that the Elmco investment was in fact a complex and risky venture involving unregistered securities and was neither endorsed nor offered by Dean Witter. He also did not disclose that he and Elmco had entered into an agreement in which Brown was to

receive a sales commission from Elmco for any securities sold by Brown.

Bruschi agreed to invest in Elmco and Brown visited her at home to close the transaction. Because the Elmco investment was a private securities offering, he brought several disclosure documents [1] designed to bring the transaction within the exemption provision of Rule 146 of the Securities and Exchange Commission.[2] The documents consisted of approximately 160 pages of text and exhibits. Brown agreed to act as Bruschi's "offeree representative" and advise her as to the tax ramifications and economic merits and risks of the Elmco investment.[3] Bruschi signed the documents without reading them [4] after being assured by Brown that the signature process was a mere formality.

Bruschi invested approximately $84,000 in the Elmco securities. In April 1985 the Internal Revenue Service disallowed several deductions taken by Bruschi and her husband on their joint tax returns for the years 1981, 1982, and 1983. Bruschi negotiated a settlement after her accountants and attorneys advised her that a successful contest of the IRS's ruling was uncertain and would be costly.

## II. DISCUSSION

The elements of a Rule 10b–5 cause of action are: (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages. *See Diamond v. Lamotte,* 709 F.2d 1419, 1423 (11th Cir.1983); *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir. Unit A 1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Summary judgment for the defendant is improper unless the record reveals that there are no genuine issues as to any material fact supporting the plaintiff's claim and the defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In applying this standard we must resolve all reasonable doubts in favor of Bruschi, the nonmoving party. *Williams v. City Dothan,* 745 F.2d 1406 (11th Cir.1984). The parties agree that there are material facts in dispute as to the first two elements of Bruschi's Rule 10b–5 claim. We conclude that there also are

---

1. The parties filed copies of several of these documents with the district court prior to the grant of summary judgment. The following documents are contained in the record: "Offering Memorandum," "Subscription Agreement, "Subscriber Questionnaire," "Designation of Offeree Representative," "Offeree Representatives Written Disclosure," and "Offeree Representative Questionnaire."

2. Rule 146, entitled "Transactions by an issuer deemed not to involve any public offering," previously was codified at 17 C.F.R. § 230.146 (1982). The rule was removed effective June 30, 1982, but was in effect at the time of the alleged transaction. *See* 47 Fed.Reg. 11,261 (1982). The rule in part provided the following:

(d) *Nature of offerees.* The issuer and any person acting on its behalf who offer, offer to sell, offer for sale or sell the securities shall have reasonable grounds to believe and shall believe:

(1) Immediately prior to making any offer, either:

(i) That the offeree has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or

(ii) That the offeree is a person who is able to bear the economic risk of the investment; and

(2) Immediately prior to making any sale, after making reasonable inquiry, either:

(i) That the offeree has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or

(ii) That the offeree and his offeree representative(s) together have such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks of the prospective investment and that the offeree is able to bear the economic risk of the investment.

17 C.F.R. § 230.146(d) (1982) (emphasis in original).

3. Brown's agreement to act as Bruschi's offeree representative is confirmed in the "Offeree Representatives Written Disclosure."

4. The amended complaint does not explicitly allege that Bruschi did not read the disclosure documents before signing them. In her reply brief to this court, however, Bruschi concedes that she did not read the documents before signing them.

material facts in dispute as to the third and fourth elements of Bruschi's claim; consequently, the district court erred in granting summary judgment to Brown.

### A. Justifiable Reliance

Brown first contends that there are no material facts in dispute to support the justifiable reliance element of Bruschi's Rule 10b–5 claim. Brown points to representations in the disclosure documents that conflict with the alleged oral misrepresentations and argues that, as a matter of law, an investor is not justified in relying on oral misrepresentations that conflict with contemporaneous written representations. We disagree.

■ We have never held that, regardless of the circumstances, an investor is always precluded from recovering under Rule 10b–5 if the misrepresentations upon which the investor relied were oral and conflict in some way with contemporaneous written representations available to the investor. Determinations of whether an investor's reliance was justified requires the consideration of all relevant factors, including: (1) the sophistication and expertise of the plaintiff in financial and security matters; (2) the existence of long standing business or personal relationships between the plaintiff and the defendant; (3) the plaintiff's access to relevant information; (4) the existence of a fiduciary relationship owed by the defendant to the plaintiff, (5) concealment of fraud by the defendant; (6) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987); *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516 (10th Cir.1983) (citing *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 955 (5th Cir.1981); *Nye v. Blyth Eastman Dillon & Co.*, 588 F.2d 1189, 1197 (8th Cir.1978); *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir.1976); *Hughes v.*

*Dempsey–Tegeler & Co.*, 534 F.2d 156, 176–77 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976)). No single factor is dispositive; all must be considered and balanced in determining whether reliance was justified. *Zobrist*, 708 F.2d at 1516–17.

■ It may be argued that the most prudent course for Bruschi to have taken would have been to read the disclosure documents before deciding whether to invest in Elmco. Under the circumstances, however, her failure to do so—and thereby discover the inconsistencies between the alleged oral misrepresentations and the written representations—does not make her reliance unjustified as a matter of law. We first note that while some statements in the disclosure documents conflicted with some of the alleged oral misrepresentations, other statements in these documents confirmed some of the alleged oral misrepresentations. Bruschi alleges that Brown made oral misrepresentations that the economic and tax risks of the Elmco investment were minimal. These misrepresentations conflicted with statements in the disclosure documents that the economic and tax risks were substantial. The disclosure documents, however, were consistent with Brown's alleged oral misrepresentations that (1) there were no material relationships between himself and Elmco and (2) that he had not and would not be receiving any compensation from Elmco. The "Offeree Representative's Written Disclosure" states the following:

> By copy of this document, I [ (Brown) ] hereby disclose to the above named prospective subscriber [ (Bruschi) ] any material relationships between myself and the Issuer [ (Elmco) ] or its affiliates which now exist, are mutually understood to be contemplated or which have existed at any time during the previous two years and any compensation received or to be received as a result of such relationship: [ (blank) ] [5]

---

**5.** Bruschi does not argue, and we do not mean to imply, that the amended complaint states a Rule 10b–5 claim based on any written misrepresentations made by Brown. Bruschi acknowl-

edges that she did not read the disclosure documents; consequently, she could not have relied on any written misrepresentations contained in those documents. *Shores v. Sklar*, 647 F.2d 462,

Thus, even if Bruschi had read the disclosure documents, she would have received conflicting signals as to the reliability of the alleged oral misrepresentations rather than the obvious indication of unreliability argued by Brown.

The fact that *some* information in the disclosure documents would have indicated that some of Brown's alleged oral misrepresentations were unreliable is a factor to consider, but this factor alone is not dispositive; all of the relevant factors must be balanced. *See Zobrist,* 708 F.2d at 1516–17. We also must consider the following factors: Bruschi was unsophisticated and inexperienced in financial matters; Brown was her investment advisor and was more knowledgeable as to the economic and tax risks of the investment; as Bruschi's offeree representative Brown undertook a fiduciary obligation to act in Bruschi's best interests, see 17 C.F.R. § 230.146(a)(1)(iv) note 3 (1982); Bruschi did not read the disclosure documents because Brown advised her not to do so; Brown knew the misrepresentations were false; and Brown initiated the transaction. *See G.A. Thompson & Co. Inc. v. Partridge,* 636 F.2d 945, 955 (5th Cir.1981); *Zobrist,* 708 F.2d at 1516. When all factors are considered, it cannot be held as a matter of law that Bruschi's reliance on the alleged oral misrepresentations was not justified.

### B. Causation

 Brown next contends that there are no material facts in dispute which would support the allegation that his actions were the proximate cause of Bruschi's loss. To satisfy the causation element of a Rule 10b–5 cause of action, the plaintiff must prove both actual causation, or "transaction causation," and proximate causation, or "loss causation." *See Rousseff v. E.F. Hutton Co.,* 843 F.2d 1326,

1329 & n. 2 (11th Cir.1988). To establish transaction causation, the plaintiff need only show that the defendant's misrepresentations caused the plaintiff to make the investment. *Id.* at 1329 n. 2. To establish loss causation, however, "[t]he plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *Huddleston v. Herman & MacLean,* 640 F.2d at 549, *cited in Rousseff,* 843 F.2d at 1329 n. 2.[6]

 Prosser describes the distinction between transaction causation and loss causation as follows:

[I]f false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline of the market, or insolvency of the corporation, brought about by business conditions or other factors in no way related to the representations, will not afford any basis for recovery. It is only where the fact misstated was of a nature calculated to bring about such a result that damages for it can be recovered.

*Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 718 (2d Cir.) (Meskill, J., dissenting) (quoting Prosser, *Law of Torts* p 110 at 732 (4th ed.) (footnotes omitted)), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Thus, even though the defendant's misconduct induces the plaintiff to make the investment, if the particular loss complained of is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operate to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b–5. On the other hand, the plaintiff may recover if the defendant's misrepresentation "touches upon the reasons for the investment's decline in value." *Huddleston,* 640

---

468–70 (5th Cir.1981) (in banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

**6.** While courts often define proximate cause in terms of the how "direct" the connection is between the defendant's misconduct and the plaintiff's loss, or in terms of the foreseeability of the plaintiff's loss, it appears that policy considerations external to the transaction between

the parties actually govern the courts' decisions. *See, e.g., Huddleston,* 640 F.2d at 549 ("Absent the requirement of [loss] causation, Rule 10b–5 would become an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission.") (citations omitted).

F.2d at 549. This requirement is satisfied when a defendant makes representations that are inherently related to the losses the purchaser subsequently suffers. This occurs, for example, when a defendant misrepresents a stock's intrinsic worth at the time of the misrepresentation. To recover, the plaintiff need not show that the defendant's act was the sole and exclusive cause of the injury he has suffered; "he need only show that it was 'substantial,' i.e., a significant contributing cause." *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92 (2d Cir.1981) (citation omitted). This encompasses the situation in which a defendant induces a plaintiff to enter into a risky transaction by misrepresenting it as safe and the plaintiff suffers a loss resulting from the risky nature of the investment.

■ In this case Bruschi has created a fact issue as to whether Brown's misrepresentations related to the reason for the decline in value of her investment. Bruschi has offered evidence of Brown's misrepresentations as to the risks of the investment. In her affidavit opposing summary judgment, Bruschi asserts that "[a]s a direct result of the acts and practices of Brown and Elmco, Plaintiff has suffered substantial losses of money, *including substantially all of her initial investment.*" (emphasis added). This allegation is supported by her answers to interrogatories. Bruschi has thus created a fact issue as to whether Brown caused her losses by misrepresenting the intrinsic worth of the Elmco securities as of the time of the misrepresentations. Summary judgment thus was inappropriate.

### C. Compensable Damages

■ Brown contends that there are no material issues of fact in dispute with regard to compensable damages because the loss of anticipated tax benefits is not compensable in a Rule 10b–5 action. At oral argument, Bruschi conceded that the loss of anticipated tax benefits is not compensable in a Rule 10b–5 action. We therefore do not address this issue.[7] It does not

follow, however, that the proof Bruschi has offered does not support the recovery of any form of damages. We previously have concluded that Bruschi has created a factual issue as to whether, because of Brown's misrepresentations, Bruschi paid more for the Elmco securities than they were actually worth at the time of purchase. Proof of this overvaluation would establish that Bruschi has suffered out-of-pocket losses, the usual damages in a Rule 10b–5 case. *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1013 (11th Cir.1985). Out-of-pocket losses are measured by the difference between the fair value of what the plaintiff received and the fair value of what the plaintiff would have received had there been no fraudulent conduct. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed. 2d 741 (1972), *cited in Woods*, 765 F.2d at 1013.

■ Bruschi also contends that rescission is an available remedy in the present case. Other circuits have recognized the availability of rescission as a remedy in Rule 10b–5 cases under appropriate circumstances. *See, e.g., Huddleston*, 640 F.2d at 554; *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1173 (2d Cir.1970). The Supreme Court has recognized that "there is authority for allowing the § 10(b) plaintiff, at least in some circumstances, to choose between 'undoing the bargain (when events since the transaction have not made rescission impossible) or holding the defendant to the bargain by requiring him to pay [out-of-pocket] damages,'" *Randall v. Loftsgaarden*, 478 U.S. 647, 662, 106 S.Ct. 3143, 3153, 92 L.Ed.2d 525 (1986) (citation omitted) (brackets in original). Eleventh Circuit case law also has suggested strongly that rescission is an available remedy in Rule 10b–5 cases under certain circumstances. *See Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 687 n. 15 (11th Cir.1983). In *Silverberg*, we took special note of Justice Black's admonition

---

**7.** We express no opinion as to the validity of this proposition as a rule of law.

in *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946) that:

> where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedies to make good the harm done.

*See Silverberg,* 710 F.2d at 687 n. 15 (quoting *J.I. Case v. Borak,* 377 U.S. 426, 433–34, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964) (quoting *Bell* )). We see no reason why causes of action under Rule 10b–5 should be any exception; therefore, we conclude that rescission is an available remedy under Rule 10b–5 in appropriate cases.

We also conclude that rescission is an appropriate remedy under the circumstances of the present case. In *Silverberg,* we held that rescission was a proper remedy in that case even though the defendant was not the seller of the securities:

> Though we recognize the harshness of this result given that the defendants were not the actual sellers of the stock and therefore must "rescind" by paying an amount they in fact never received, the substantial role played by the defendants provides adequate justification for the award.

*Id.* at 687. We decided *Silverberg* on state law grounds, but the rationale for allowing rescission in that case applies to the Rule 10b–5 case with which we presently are faced.

## III. STATE LAW CLAIMS

■ We have concluded that the district court erred in granting summary judgment to the defendant as to the plaintiff's Rule 10b–5 claim and we reverse the judgment of the court with respect to that claim. Because the plaintiff's amended complaint also asserts pendant state claims against the defendant, we must vacate that portion of the court's summary judgment order relating to those claims. The court's order makes no findings of fact or conclusions of law; we therefore must presume that the court dismissed the state claims without prejudice after declining to retain pendant jurisdiction over the claims once the sole federal claim present in the case had been disposed of by the court. *See Pharo v. Smith,* 621 F.2d 656, 674–75 (5th Cir.) *aff'd in part, remanded in part on other grounds,* 625 F.2d 1226 (5th Cir.1980). We express no opinion whether summary judgment as to the state claims would have been proper or whether retention of jurisdiction over the claims will be proper upon return of this case to the district court.[8]

REVERSED in part and VACATED in part.

COX, Circuit Judge, specially concurring:

I agree that summary judgment was not appropriate in this case. I write separately to express my disagreement with the majority's conclusion "that rescission is an appropriate remedy under the circumstances of the present case."

The traditional measure of damages in a suit under Rule 10b–5 alleging fraud on the part of the seller of securities is out-of-pocket loss, *see Pelletier v. Stuart–James Co., Inc.,* 863 F.2d 1550, 1558 (11th Cir. 1989) (citation omitted); *Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975), and our most recent decisions have left unresolved the question of whether and under what circumstances rescission is an available remedy. *See Pelletier,* 863 F.2d at 1558 n. 19; *Rousseff v. E.F. Hutton Co., Inc.,* 843 F.2d 1326, 1329 n. 1 (11th Cir. 1988). *Accord Randall v. Loftsgaarden,* 478 U.S. 647, 106 S.Ct. 3143, 3152, 92 L.Ed. 2d 525 (1986) ("The issue of whether and

---

8. Bruschi argues in her brief that when this case is returned to the district court it should weigh the following factors in deciding whether to retain jurisdiction over the state claims: whether the state law claims will be time-barred if dismissed and whether the district court is the only forum in which the federal and state claims could be heard together. These arguments should be made to the district court rather than to this court. Accordingly, we express no opinion as to their merit.

under what circumstances rescission or a rescissionary measure of damages is available under section 10(b) is an unsettled one."). In any event, the jurisprudence on the issue unanimously supports the proposition that "[i]t is for the district judge, *after becoming aware of the nature of the case,* to determine the appropriate measure of damages in the first instance." *Arrington v. Merrill, Lynch, Pierce, Fenner & Smith,* 651 F.2d 615, 620–21 (9th Cir.1981) (citation omitted). In determining whether rescission is appropriate, the district court must consider the nature of the relationship between the plaintiff-buyer and the defendant-seller, *see Huddleston v. Herman & MacLean,* 640 F.2d 534, 554 (5th Cir. Unit A 1981) ("The use of the rescissional measure is usually limited to cases involving either privity between plaintiff and defendant or some specific fiduciary duty owed by brokers to their customers."); the specific causal nexus between the plaintiff's loss and the defendant's wrongful conduct, *see In re Fortune Systems Securities Litigation,* 680 F.Supp. 1360, 1369 (N.D.Cal.1987); whether the plaintiff would have purchased the securities in the absence of any misrepresentations or omissions, *see Kronfeld v. Advest, Inc.,* 675 F.Supp. 1449, 1455–56 (S.D.N.Y. 1987), and the cases cited in that opinion; whether the plaintiff promptly demanded rescission, *see Jordan v. Duff & Phelps, Inc.,* 815 F.2d 429, 440 (7th Cir.1987); and whether the plaintiff is able to return the securities. *Id. See generally Jacobs,* "The Measure of Damages in Rule 10b–5 Cases," 65 Geo. L.J. 1093, 1109–1120 (1977); Note, "The Measure of Damages in Rule 10b–5 Cases Involving Actively Traded Securities," 26 Stan.L.Rev. 371, 374–77 (1974). A consideration of all of these factors is a necessary prerequisite to a determination of whether rescission or a rescissory measure of damages is appropriate in this case.

Bruschi did not pray for rescission in her amended complaint, nor did she assert it as a potential remedy in her memorandum in opposition to the motions for summary judgment. Although this failure does not preclude the court from considering rescission as a possible remedy, *see Wolf v.*

*Frank,* 477 F.2d 467, 478 (5th Cir.1973), it is significant because it indicates that the district court has never had an opportunity to consider whether the remedy is appropriate under the circumstances of this case. Indeed, the insufficiency of the evidentiary record would have effectively precluded such a determination. For example, the record does not evidence whether Bruschi is still in possession of the securities, whether she promptly demanded rescission after learning of the alleged misrepresentations and omissions, or whether the decline in the value of the Elmco investment was related to supervening market forces, and not to any act or omission of Brown. Such a record cannot support this court's conclusion that rescission or a rescissory measure of damages would be an appropriate remedy in this case.

I conclude that it is unnecessary to reach the issue of whether rescission or a rescissory measure of damages is appropriate in this case. The only question properly before us is whether a genuine issue of material fact exists which precludes summary judgment. Bruschi never presented a claim for rescission in the district court, and the district court's ruling did not address the issue. Additionally, the evidentiary record is too skeletal to permit an informed conclusion as to whether rescission is an appropriate remedy in this particular case.