Marion PARKHURST, Plaintiff,

v.

NORTH AMERICAN FINANCIAL SER-
VICES COMPANIES, INC., a Michigan
corporation, James A. Parrelly, and
Daniel P. Whaley, jointly and severally,
Defendants.

Civil Action No. 95–40216.

United States District Court,
E.D. Michigan,
Southern Division.

March 19, 1996.

Alfred J. Eppens, Riley & Roumell, De-
troit, MI, for Marion Parkhurst.

Douglas D. Wright, Bloomfield Hills, MI,
for North American.

Karen A. Gould, Hertz, Schram, Bloomfield Hills, MI, for North American Financial Services Companies, Incorporated, James A. Parrelly, Daniel P. Whaley.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

GADOLA, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants, North American Financial Services Companies, Inc., James Parrelly and Daniel Whaley, have brought this motion to dismiss the plaintiff, Marion Parkhurst's complaint for failure to state a claim upon which relief can be granted. The original complaint filed by Parkhurst alleges violations of the Securities Exchange Act of 1934 and the Securities Act of 1933. That complaint also asserted state law claims of misrepresentation and fraud and breach of fiduciary duty, but these counts were dismissed without prejudice on September 7, 1995. The defendants contend that the remaining 1933 and 1934 Act claims are defeated by representations and warranties made by the plaintiff in two different Subscription Agreements and by her receipt of an Offering Circular which disclosed the risk, illiquidity and potential conflict of interest arising from the purchase of stock from the defendant.

The defendants have also brought a motion to stay discovery pending disposition of motion to dismiss. Because the discovery motion will be rendered moot by the decision on the motion to dismiss—if the case is dismissed, discovery will be unnecessary, if it is denied, discovery will proceed—the court will consider the Rule 12(b)(6) motion first.

### I. Factual Background

The basic facts underlying the complaint and these motions are uncomplicated. Parkhurst was a client of defendant Parrelly at the securities brokerage firm of North American Financial Group ("NAFG"). On July 27, 1994, Parkhurst signed a Purchaser Questionnaire and Subscription Agreement to purchase 500 shares ($50,000) of North American Financial Services Companies, Inc. ("NAFSCI") 12% Class B Preferred Stock in a private offering of that security. In this agreement, Parkhurst represented that she met the investment's financial qualifications because her net worth was $1,000,000. This purchase was approved and made effective on August 8, 1994.

On December 29, 1994, Parkhurst executed a second Purchase Questionnaire and Subscription Agreement to purchase an additional 500 shares of the stock. This second purchase was made effective December 30, 1994.

The agreements involved here are identical, containing a Purchaser Questionnaire and Subscription Agreement section. Each of the Subscription Agreements bearing Parkhurst's signature contains a clause above the signature block represented that the information concerning the investors qualifications contained in the Questionnaire was complete, accurate and reliable. The Subscription Agreement also contains a clause indicating whether the purchaser has received information about the securities and acknowledging the purchaser's understanding of the terms of the offering. It provides:

> The undersigned understands that the 12% Class B Preferred Stock is not registered and is not being offered pursuant to a prospectus. The undersigned has instead reviewed an offering circular dated as of November 12, 1993, as amended.

The paragraphs preceding the purchaser's signature to the Subscription Agreement contain further warranties and representations, including: (1) that the signer carefully reviewed the Offering Circular and that no oral representations of information were furnished that were inconsistent with it; (2) that the signer had no need for liquidity and could bear the risks of an investment for an indefinite period; (3) that the purchaser was able to evaluate the merits and risks of investment; (4) that the purchaser understood the offer and sale was private and not registered and that resale was restricted; and (5) that all information provided regarding the pur-

chaser's financial position was correct and complete.

The introductory pages of the Offering Circular contain the following investor notices:

THE SECURITIES OFFERED HERE INVOLVE A HIGH DEGREE OF RISK. NO PUBLIC MARKET FOR THE COMPANY'S SECURITIES EXISTS, ALTHOUGH THE COMPANY WILL USE ITS BEST EFFORTS TO MAKE A MARKET FOR ITS 12% CLASS B PREFERRED STOCK AND ITS PURCHASE RIGHTS. PURCHASERS MAY NOT BE ABLE TO RESELL THE 12% CLASS B PREFERRED STOCK OR THE DETACHABLE PURCHASE RIGHTS.

THE 12% CLASS B PREFERRED STOCK AND DETACHABLE PURCHASE RIGHTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

In her complaint, filed on June 30, 1995, Parkhurst alleges that she was not advised by Parrelly or anyone else that the investment involved a "high degree of risk," that it was "illiquid," or that it required Parkhurst to meet the "accredited individual" requirements in the Amended Offering Circular. Paragraph 15 of the Complaint. Parkhurst contends that on July 27, 1994, Parrelly presented documents for her signature, represented that they were merely routine paperwork for the purchase of the securities, did not afford her an opportunity to read the documents before she signed them, and did not give her copies of those documents after she signed them. These actions, the complaint states, "operated as a fraud or deceit upon Plaintiff in connection with the purchase of securities."

Specifically, the complaint alleges the following facts:

(A) In October of 1989, Parrelly became the Investment Executive for Parkhurst's account at Paine–Webber in Dearborn, Michigan. In 1990, the Dearborn branch office of Paine–Webber closed and Parrelly moved to Hamilton Investments, where he continued as Investment Executive for Parkhurst's account. In 1994, Parrelly became the Managing Director at the defendant North American Financial Services Company, Inc. ("NAFSCI"), a financial holding company. Parkhurst retained Parrelly as her financial consultant and moved her account to a wholly owned subsidiary of NAFSCI, North American Financial Group, Inc.

(B) On July 27, 1994, Parrelly offered Parkhurst an opportunity to buy shares of Class B stock at $100/share in NAFSCI. Parrelly recommended the NAFSCI stock, but did not disclose that the investment involved a "high degree of risk" or that Parkhurst did not meet the "accredited individual" requirements for the securities as described in the Amended Offering Circular. Parrelly convinced Parkhurst to sign various documents in blank without affording her an opportunity to read either the Subscription Agreement of the Amended Offering Circular. Parrelly allegedly induced her to sign the Subscription Agreements by representing that they were merely "routine preliminary documents." Moreover, Parrelly did not disclose that, as the Managing Director of NAFSCI, he stood to accrue a substantial gain as a result of Parkhurst's investment in the NAFSCI stock.

(C) Parkhurst invested $100,000 in the NAFSCI securities. Upon learning of these alleged misrepresentations, Parkhurst sought to rescind the contract. Unsuccessful, Parkhurst filed this action on June 30, 1995, alleging violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 in connection with the sale of the 12% Class B NAFSCI stock. Parkhurst's complaint names Daniel P. Whaley and NAFSCI as defendants because they failed to supervise Parrelly and "ratified" Parrelly's actions by refusing to grant Parkhurst's request for a rescission.

The complaint requests immediate rescission of the contract, restoration of the $100,000, compensatory and exemplary damages in excess of $10,000, and reasonable costs and attorney fees.

In their motion to dismiss, the defendants contend that Parkhurst's allegations are contradicted by her written representations and warranties contained in the two agreements discussed above. Specifically, the defendants submit, in the Subscription Agreements, which she admittedly signed, Parkhurst represented that she recognized the risks of the investment and that she received the Offering Circular, containing all of the information which she alleges was not provided to her. The defendants argue that Parkhurst cannot now claim that this information was misrepresented or omitted, because Parkhurst has already represented that she received that information.

## II. Legal Standard

■ Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint which fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). In applying this standard, the court must presume all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* The court need not, however, accord the presumption of truthfulness to any legal conclusion, opinions or deductions, even if they are couched as factual allegations. *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). Accordingly, to determine whether a complaint should be dismissed for failure to state a claim under Rule 12(b)(6), this court must examine the applicable substantive law and the facts alleged in the plaintiff's complaint.

## III. Discussion

To establish a violation of § 10(b) of the 1934 Act, the plaintiff has the burden of establishing that the alleged misrepresentation or omission was (1) one of material fact, (2) made with scienter, (3) on which plaintiff reasonably relied, and (4) which proximately caused the plaintiff's damages. *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402 (6th Cir.1991). The defendants do not contest that there are material facts in dispute concerning the first, second and fourth elements of Parkhurst's claim. They rely only upon the argument that Parkhurst's reliance on any misstatement was unreasonable as a matter of law because the Offering Circular would have fully disclosed the nature of the transaction. Resolving all doubts in favor of Parkhurst, this court cannot conclude that Parkhurst's reliance on any alleged misrepresentation was unreasonable as a matter of law.

■ In determining whether an investor's reliance upon a misrepresentation or omission was justified under Rule 10b–5, most courts have considered several factors, including: (1) the sophistication and expertise of the plaintiff in financial and security matters; (2) the existence of long standing business or personal relationships between the plaintiff and the defendant, (3) the plaintiff's access to relevant information, (4) the existence of a fiduciary relationship owed by the defendant to the plaintiff, (5) concealment of fraud by the defendant, (6) whether the plaintiff initiated the stock transaction or sought to expedite the transaction, and (7) the generality or specificity of the misrepresentations. *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1032 (2d Cir. 1993); *Davidson v. Wilson,* 973 F.2d 1391, 1400 (8th Cir.1992); *Myers v. Finkle,* 950 F.2d 165, 167 (4th Cir.1991); *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 918 (6th Cir.1991); *Bruschi v. Brown,* 876 F.2d 1526, 1529 (11th Cir.1989); *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1516 (10th Cir.1983). All of these factors must be considered and balanced, as no single factor is dispositive in determining

whether reliance was justified. *Brown*, 991 F.2d at 1032; *Bruschi*, 876 F.2d at 1529.

■ Consideration of these factors provides support for the premise that Parkhurst's alleged reliance on misrepresentations or omissions would not, as a matter of law, be unjustified. While Parkhurst was not completely inexperienced in investment matters, she certainly was not an expert or highly sophisticated. Through the course of her five year relationship with Parrelly, it is her claim that she had come to trust Parrelly's investment advice. Parkhurst's willingness to retain Parrelly as her account advisor through his moves to Hamilton Investments and North American Financial Group provides substantiation for her position in that regard. Moreover, Parrelly clearly possessed more information about the NAFSCI securities, particularly the degree of risk, liquidity and his relation to NAFSCI. Parkhurst alleges that she signed the documents without reading them because she was not presented with an opportunity to read them and was assured that her signature was a routine preliminary matter. Assuming, as this court must under Rule 12(b)(6), that Parrelly actually made false statements about this investment, Parrelly would certainly have known that his statements were false. Finally, Parrelly initiated the transaction. Upon consideration of these factors, this court cannot say that, for purposes of Rule 10b–5, Parkhurst's reliance upon Parrelly's representations was unreasonable as a matter of law.

To be certain, the facts alleged in Parkhurst's complaint are virtually identical to the facts in *Bruschi v. Brown*, 876 F.2d 1526 (11th Cir.1989). In *Bruschi*, the plaintiff, Margaret Bruschi, a high school graduate with minimal investment experience, sought the services of a reputable investment firm to assist her in managing her financial affairs. She eventually selected Dean Witter Reynolds, Inc. and the defendant Ken Brown became her broker and investment advisor. Brown presented and strongly recommended an investment opportunity in a computer equipment sale and lease arrangement known as the Elmco investment. He indicated that it would also provide Bruschi with significant tax deductions. Brown did not disclose the riskiness or the complexity of the Elmco venture or that it involved unregistered securities which were neither endorsed nor offered by Dean Witter. Nor did Brown disclose that he was to receive a commission from Elmco for any sales of those securities. When Brown and Bruschi met to close the transaction, Brown presented approximately 160 pages of disclosure documents. Bruschi signed these documents without reading them after being assured by Brown that the signature process "was a mere formality."

Bruschi filed a Rule 10b–5 action against Brown when the Internal Revenue Service denied her tax deductions on the Elmco securities. The District Court granted summary judgment in favor of Brown. The Court of Appeals reversed, concluding that material facts were in dispute concerning whether Bruschi justifiably relied upon the oral representations. Rejecting Brown's argument that an investor may not justifiably rely upon oral misrepresentations that conflict with disclosure documents, the court stated:

> We have never held that, regardless of the circumstances, an investor is always precluded from recovering under Rule 10b–5 if the misrepresentations upon which the investor relied were oral and conflict in some way with contemporaneous written representations available to the investor.... It may be argued that the most prudent course for Bruschi to have taken would have been to read the disclosure documents before deciding to invest in Elmco. Under the circumstances, however, her failure to do so—and thereby discover the inconsistencies between the alleged oral misrepresentations and the written representations—does not make her reliance unjustified as a matter of law. *Id.* at 1529.

The court then noted that, even if Bruschi had read the disclosure documents, she would at best have received conflicting signals as to the veracity or reliability of the oral representations. *Id.* at 1530. Moreover, even though some of the information in the disclosure documents would have demonstrated that Brown's oral representations were unreliable, the availability and sufficien-

cy of this information was one of the several relevant factors to be considered in determining whether Bruschi's reliance upon the oral statements was justifiable. *Id.* Evaluating Bruschi's complaint in light of all the relevant factors, the court found that Bruschi's reliance could not be held unjustifiable as a matter of law. *Id.*

Although there is ample case law which indicates that investors will be denied relief under Rule 10b–5 where the oral misrepresentations conflict with contemporaneous written representations available to the investor, those cases do not bear directly upon situations where the disclosure documents were not fully or adequately presented. *See Brown,* 991 F.2d at 1032–33; *Aschinger,* 934 F.2d at 1408. Those cases stand for the proposition that an investor who receives written offering materials containing full and objective disclosures and who declines to read these documents, relying instead upon the general assurances of the defendant, does so at his peril. *Aschinger,* 934 F.2d at 1408 (rejecting a fraudulent omission claim because information was readily available to the plaintiff and because the plaintiff made no inquiry about that information); *Cohen,* 841 F.2d at 287. ("[R]eliance on a misrepresentation is not reasonable when the plaintiff could have through the exercise of reasonable diligence, ascertained the truth of the matter."); *Zobrist,* 708 F.2d at 1518 ("[I]t is our view that knowledge of information contained in a prospectus or an equivalent document authorized by statute or regulation, should be imputed to investors who fail to read such documents."). They do not hold, however, that a failure to read disclosure documents is reckless and unjustifiable in every situation, even where those documents would disprove the reliability of oral misrepresentations. Construing all facts in favor of Parkhurst, this court cannot conclude as a matter of law, that Parkhurst's failure to read the disclosure documents justifies dismissal of her complaint.

■ With respect to Parkhurst's claim under the Securities Act of 1933, this court cannot rule as a matter of law that Parkhurst's reliance on the alleged oral representations or omissions was unreasonable. Section 12(2) provides that "any person" who "offers or sells a security ... by means of a prospectus or oral communication, which ... omits to state a material fact" may be liable to an unknowing purchaser. 15 U.S.C. § 77*l*. This section has been held to authorize suits based upon misleading omissions from either oral communications or written prospectuses. *MidAmerica Federal Savings & Loan v. Shearson/American Express, Inc.,* 886 F.2d 1249, 1255 (10th Cir.1989); *Casella v. Webb,* 883 F.2d 805, 808 (9th Cir.1989). Moreover, unlike claims under Rule 10b–5, an action under section 12(2) does not require the plaintiff to demonstrate justifiable reliance upon the alleged misrepresentations or omissions. *MidAmerica,* 886 F.2d at 1256 (noting that section 12(2) requires only that purchasers of securities show a lack of actual knowledge of a material omission in order to prevail.); *Casella,* 883 F.2d at 809 ("Constructive knowledge cannot bar a purchaser's recovery under section 12(2)."). Accordingly, even if this court assumed that the statements contained in the Offering Circular would have directly refuted the alleged representations made by Parrelly, this court could not conclude as a matter of law that Parkhurst has failed to state a claim for relief under section 12(2) of the Securities Act of 1933.

### *ORDER*

**THEREFORE, IT IS HEREBY ORDERED** that defendant's motion to dismiss for failure to state a claim upon which relief may be granted is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to stay discovery is **DENIED.**

**SO ORDERED.**