Carl **ANDERSON** and Southern Resource Management, Inc. Plaintiffs,

v.

**TRANSGLOBE ENERGY CORPORATION** and Richard L. Coglon, Defendants.

No. 98–209–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Feb. 8, 1999.

Katherine C. Lake, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Burton Webb Wiand, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Clearwater, FL, for Carl Anderson, Southern Resource Management, Inc.

Frederick Stewart Schrils, Francis Michael Curran, Holland & Knight, LLP, Tampa, FL, for Transglobe Energy Corp.

William J. Schifino, Jr., Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, for Richard L. Coglon.

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court for consideration of Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint (Dkts.10, 12), and Plaintiffs' response in opposition (Dkt.19).

### STANDARD OF REVIEW

A district court should not dismiss a complaint unless it appears, "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a Plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon

which it rests." *See Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court can only examine the four (4) corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D.Fla.1995). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

In addition, a court must accept a Plaintiff's well pled facts as true and construe the complaint in the light most favorable to the Plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir.1991); *Powell v. United States*, 945 F.2d 374 (11th Cir.1991). With this standard in mind, the Court turns to consider Plaintiffs' claims.

### FACTUAL BACKGROUND

This is a complex securities litigation case. Plaintiff Carl Anderson ("Anderson") is a resident of Florida and is president of Southern Resource Management. Plaintiff Southern Resource Management ("SRM") is a corporation with its principal place of business in Hillsborough County, Florida. Defendant TransGlobe Energy Corporation ("Transglobe"), formerly known as Dusty Mac Oil and Gas Limited, is primarily engaged in the drilling for, and production of, oil and gas. Defendant Richard L. Coglon ("Coglon") is the former president and director of Trans-Globe.

The original cause of action was filed on January 29, 1998, in a Complaint based on section 27 of the Exchange Act (15 U.S.C. § 78aa), in that the claims arise under Section 10(b) of the Exchange Act, (15 U.S.C. § 78j(b)) and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder (17 C.F.R. § 240.10b–5) (Dkt.1).

On July 28, 1998, Defendants filed an Order to Show Cause why the case should not be dismissed for failure to prosecute (Dkt.5). On July 31, 1998, Plaintiffs filed a response to the Order to Show Cause (Dkt.6). On August 17, 1998, Plaintiffs filed their First Amended Complaint (Dkt.8). On September 14, 1998, Defendants filed a Motion to Dismiss the First Amended Complaint with prejudice (Dkt.10).

The following facts are alleged in the First Amended Complaint and are relevant to the issues before this Court:

1. Anderson learned of TransGlobe through various brokers. The brokers relayed statements made to them by Coglon as TransGlobe's president regarding the company. (Dkt. 8, Paragraph 8).

2. Based on these statements, Anderson began purchasing shares of TransGlobe. (Dkt. 8, Paragraph 9).

3. In early 1996, Coglon approached Anderson about investing in a private placement in which TransGlobe was raising money to purchase an equity interest in International Power Corporation ("IPC"). During the course of the negotiations of the private placement, Anderson dealt with Coglon as TransGlobe's representative. (Dkt. 8, Paragraph 10).

4. On November 8, 1996, Coglon was terminated for cause from his position with TransGlobe. TransGlobe has not reported the reason for Coglon's departure. (Dkt. 8, Paragraph 11).

5. Upon information and belief, Coglon was promoting TransGlobe stock while selling the stock in his own offshore accounts. Coglon's statements induced Anderson and other investors to purchase TransGlobe stock. (Dkt. 8, Paragraph 12).

6. These transactions were not disclosed to TransGlobe investors. (Dkt. 8, Paragraph 13(b)1).

7. Upon information and belief, Coglon's undisclosed sale of these shares contributed to the decline in the value of the stock. (Dkt. 8, Paragraph 13(b)2).

8. From July 1995 to the time of Coglon's departure in December 1996, Defen-

dants made numerous misstatements of material fact and omissions regarding the TransGlobe stock and the future of the company. The purpose of these statements was to induce Plaintiffs and others to invest in and purchase the securities of TransGlobe. (Dkt. 8, Paragraph 13).

9. Coglon told brokers and others that the S–1 block in Yemen would produce up to 4 billion barrels of oil. However, Plaintiffs contend that there was no reasonable basis for making this statement. (Dkt. 8, Paragraph 13a).

10. The company and Coglon, through its agents, told brokers and investors that each well contained 100 million barrels of oil. (Dkt. 8, Paragraph 13(a)2).

11. On numerous occasions when Coglon traveled to Yemen, he told brokers and investors that he was going there to sign the deal with the Yemeni government for the S–1 block. His statement indicated that the transaction was "imminent" and indicated the signing of the deal would provide substantial benefits to the company and increase the price of the company's stock. The company has yet to receive benefits from the deal. (Dkt. 8, Paragraph 13(a)3).

12. Coglon told of his close and influential relationship with the Yemeni tribal prince with authority over oil transactions and his visits to the palace in order to persuade investors to buy stock, and he later reaffirmed these statements when he traveled to Tampa in late January or early February 1996 when he convinced Anderson to participate in the private placement. (Dkt. 8, Paragraphs 4 and 5).

13. The company and Coglon issued overly optimistic press releases regarding the prospects of obtaining the S–1 concession in Yemen. Even when other representatives from TransGlobe found out about these statements, TransGlobe made no efforts to try and correct them. (Dkt. 8, Paragraphs 6 and 7).

14. At the time Coglon solicited Anderson's investment in the private placement, which was intended to fund TransGlobe's equity interest in IPC, Coglon and the company failed to disclose that Coglon would receive a finder's fee from Anderson's investment. (Dkt. 8, Paragraph 13(c)1).

15. Coglon and the company failed to disclose that Coglon and his family were material participants in the private placement. (Dkt. 8, Paragraph 13(c)2).

16. Based on the misrepresentations and leading press releases, the Plaintiffs purchased over 365,000 shares of TransGlobe stock. (Dkt. 8, Paragraph 14).

Under Count I of the Amended Complaint, Plaintiffs allege that Coglon knew of and participated in the IPC deal, and that Coglon knew and did not disclose his own securities transactions in TransGlobe. Count I also alleges that TransGlobe knew that these matters had not been disclosed and failed to correct the omissions, and that Coglon was reckless in overstating the potential and status of the Yemen S–1 concession. Under Count II, Plaintiffs allege a common law fraud claim in that Coglon was acting as an agent of the company in selling stock and providing information directly and indirectly to Anderson. Count II further alleges that Plaintiffs have suffered damages as a result of Defendants' fraud.

Defendants have moved to dismiss the case in its entirety under Fed.R.Civ.P. 12(b)(6) for failure to state a claim (Docket Nos. 10,12). Defendants contend that: 1) Plaintiffs' securities fraud allegations fall short of the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u–4(b)(1) and (2); 2) Plaintiffs' securities law claims are barred by the applicable statute of limitation and repose; and 3) Plaintiffs' common law fraud claim lacks the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiffs respond by arguing that the First Amended Complaint properly identifies each Defendant's fraud with particularity and satisfies the heightened pleading standards of Rule 9(b) and the PSLRA. Plaintiffs further state that their claims are not barred by the applicable statute of limitations.

## DISCUSSION

### A. Rule 10b–5 Claims

Section 10(b) of the Securities Exchange Act makes it unlawful to use in connection with the mails or facilities of interstate commerce any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe..." 15 U.S.C. § 78j. The SEC has adopted Rule 10b–5 which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, 1) to employ any device, scheme, or artifice to defraud, 2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, or 3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

To state a claim upon which relief can be granted for federal securities fraud under Rule 10b–5 a Plaintiff must allege that "in connection" with the purchase or sale of securities: 1) the Defendant made a false statement or omission of material fact; 2) with scienter; 3) upon which the Plaintiff justifiably relied; and 4) that caused the Plaintiff to suffer injury. *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997); *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989).

### 1. False Statement or Omission

In Paragraph 13 of the First Amended Complaint, Plaintiffs have alleged that the false and misleading statements or omissions include the following: (a) the company's potential opportunities in Yemen, specifically Block S–1; (b) disclosure of Coglon's illegal, insider, market transactions; and (c) the private placement regarding IPC. Plaintiffs further allege that based on these misrepresentations and misleading press releases, they purchased over 365,000 shares of TransGlobe stock. Therefore, Plaintiffs have alleged facts that meet the first element of a 10(b) claim.

### 2. Material Fact

Materially misleading statements or omissions by a Defendant constitute the primary element of a Rule 10b–5 violation. *Basic Inc.,* 485 U.S. at 246–47, 108 S.Ct. at 991–92. A false statement or omission will be considered "material" if its disclosure would alter the total mix of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to the investment decision. *Id.* Materiality is a mixed question of law and fact. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2nd Cir.1985). A complaint may not be dismissed under Rule 12(b)(6) unless the alleged misstatements and omissions are "so obviously unimportant to a reasonable investor that reasonable minds could differ on the question of their importance." *Id.* When viewing the allegations in Plaintiffs' First Amended Complaint as true, we must look to the alleged false misrepresentations in connection with the alleged omissions by the Defendants. It is clear to this Court that the misrepresentations and omissions alleged in Plaintiffs' First Amended Complaint are important, and reasonable minds could not differ as to their materiality. Whether or not these alleged misrepresentations and omissions are correct would be highly material to investors. Accordingly, the Plaintiffs have sufficiently pled the element of materiality as to the Defendants.

### 3. Scienter

Plaintiffs must properly allege scienter in order to state a claim pursuant to Section 10(b) and Rule 10b5. "Scienter may be established by proof of misconduct which is knowing or extremely reckless in that it reflects an extreme departure from the standards of ordinary care." *In re Checkers,* 858 F.Supp. at 1176 (citing *Huddleston v. Herman & MacLean,* 640 F.2d 534, 545 (5th Cir.1981)). In the *In re Checkers* case, this court held that the Plaintiffs sufficiently pled scienter by alleging that the Defendants "employed a scheme to overstate revenues and understate expenses so that Checker's stock price was artificially inflated." 858 F.Supp. at 1176. In the instant case, in Paragraphs 19 and 20 of the First Amended

Complaint, Plaintiffs allege that "TransGlobe knew that these matters (as described in the First Amended Complaint) had not been disclosed and failed to correct the omissions," and that "Coglon knew or was reckless in overstating the potential and status of the Yemen S–1 concession." These allegations are sufficient to meet the scienter pleading requirement.

### 4. Reliance

In paragraph 22 of the First Amended Complaint, Plaintiffs allege that they "reasonably relied" on the representation and/or omissions of Defendants. "Where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual Plaintiffs on the integrity of the market price may be presumed." *In re Checkers*, 858 F.Supp. at 1176 (citing *Basic Inc.*, 485 U.S. 224, 227, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). "It is reasonable to assume that misinformation disseminated into the marketplace will affect the market price." *Id.* at 1176 (citing *Lipton v. Documation, Inc.*, 734 F.2d 740, 745 (11th Cir.1984.)). Plaintiff's claimed reliance on such a faulty market price establishes a "fraud on the market" claim under § 10(b). In specifying the pleading requirements for a Plaintiff to establish a "fraud on the market" claim, this Court in *In re Checkers* stated that "Plaintiffs...must allege either that the stock they purchased...was actively traded on a well-developed, efficient market or facts which give rise to such an inference." 858 F.Supp. at 1177. In *In re Checkers*, Plaintiffs met this standard by alleging that the stock in question was actively traded in the NASDAQ, and that the Defendants had "devised a scheme using misleading statements to inflate common stock prices." *Id.*

A review of the pleadings in the case at bar reveal that Plaintiffs have also met the standard for pleading a "fraud on the market" claim: in Paragraph 6 of the First Amended Complaint, Plaintiffs allege that "TransGlobe stock is currently traded on the NASDAQ (TGLEF), the Toronto Stock Exchange (TGL), and the Alberta Stock Exchange (TGL)." In Paragraph 16, Plaintiffs allege that Defendants "engaged in acts, practices and courses of business which operate and will operate as a fraud and deceit

upon the Plaintiffs." In Paragraph 22, Plaintiffs allege that they have "reasonably relied" on the representations and/or omissions of Defendants. These allegations are sufficient enough to satisfy the reliance requirement.

### 5. Causation

Plaintiffs must prove both actual causation (transaction causation) and proximate causation (loss causation) to prevail on their Rule 10b–5 claims. *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir.1989). To plead transaction causation efficiently, the Plaintiffs can allege that the Defendants' misrepresentations or omissions induced the Plaintiffs to make the investments. *In re Checkers*, 858 F.Supp. 1168, 1177 (M.D.Fla. 1994). To plead loss causation sufficiently, the Plaintiffs can allege that they would not have invested had they known the truth, and that the untruth was in some reasonable direct way responsible for the loss. *Id.* In paragraph 21 of the First Amended Complaint, Plaintiffs allege that "Defendants' misrepresentations and omissions were material in that there was a substantial likelihood that a reasonable investor would have considered them important in deciding whether to purchase the Trans-Globe investment." Plaintiffs further allege in paragraph 24 that they have "suffered damage as a result of Defendants' violations of section 10(b) and Rule 10b–5." A review of the First Amended Complaint reveals that the Plaintiffs have adequately pled both actual and loss causation.

### B. Heightened Pleading Standards of Rule 9(b) and the PSLRA

The purpose of Fed.R.Civ.P. 9(b) is to ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of, so that Defendants will be able to respond effectively, eliminate those complaints filed as a pretext for discovery of unknown wrongs, and to protect Defendants from unfounded charges of wrongdoing that injure their reputations. *McDonough v. Americom International Corporation*, 151 F.R.D. 140, 141 (M.D.Fla.1993) (citing *Viscomi v. Paine, Webber, Jackson & Curtis, Inc.*, 596 F.Supp. 1537, 1539 (S.D.Fla. 1984)). However, the Complaint need only

provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud. *In re Checkers Sec. Lit.,* 858 F.Supp. 1168, 1175 (M.D.Fla.1994).

 Complaints alleging fraud must meet the heightened-pleading standards of Rule 9(b), which requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed. Civ. P. 9(b). A fraud claim meets the requirements of Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral presentations, who made the statements, the time and place of the statements, the contents of the statements or manner in which they misled the Plaintiff, and what the defendants gained as a consequence. *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir.1997).

Recently, Congress passed the PSLRA which, among other things, addressed the pleading standards for fraud as applied in the context of securities lawsuits. The PSLRA requires a securities-fraud Plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). A complaint that fails to comply with any of these must be dismissed. 15 U.S.C. § 78u–4(b)(3)(A).

 In the present case, Plaintiffs have met this burden. Plaintiffs have alleged that in early 1996, when Coglon induced Anderson to invest in TransGlobe's private placement, Coglon and Transglobe failed to disclose to Anderson that Coglon would receive a finder's fee from Anderson's investment. The Plaintiffs also allege that Defendants failed to disclose to Anderson or to the investing public that Coglon's family members were material participants in the IPC deal which was being funded by the private placement. Plaintiffs have also alleged that from July 1995 to December 1996, Defendant Coglon, then president of TransGlobe, made numerous misrepresentations directly to Plaintiff Anderson and indirectly through various brokers regarding the potential oil output of the Yemen S–1 block. Also, during this time, Plaintiffs allege that Coglon was promoting TransGlobe stock while at the same time selling stock in his own offshore accounts. Plaintiffs further allege that TransGlobe and Coglon issued overly optimistic press releases regarding the prospects of obtaining the S–1 concession in Yemen, including, but not limited to, the company's December 19, 1995 news release. Based on these misrepresentations and misleading press releases, Plaintiffs purchased over 365,000 shares of TransGlobe stock. Plaintiffs have met the pleading requirements for violations of section 10(b) of the Exchange Act and Rule 10b–5, and will therefore survive the Motion to Dismiss on Count 1.

**C. Common Law Fraud Cause of Action**

 As this Court recounted in *In re Checkers,* the essential elements of common law fraud include: "(1) a false statement of fact; (2) made; (3)...for the purpose of inducing the Plaintiff to act in reliance; (4) on the correctness of the representation; and (5) resulting damage to the Plaintiff." 858 F.Supp. at 1179 (citing *Perry v. Cosgrove,* 464 So.2d 664, 666 (Fla.App.2d Dist.1985)). As these elements are identical to those discussed above in relation to section 10(b) and Rule 10b–5, there is no need to analyze each element again. It is sufficient to state that Plaintiff has also met the pleading requirements for a common law fraud claim, and will therefore survive the Motion to Dismiss on Count II.

**D. Statute of Limitations**

 Securities-fraud claims under Rule 10b–5 must be brought within one year after discovery of the facts constituting the violation and within three years after the violation. 15 U.S.C. § 77m; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The statute begins to run when the plaintiff "has either knowledge of the violation or notice of the facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Knight v. E.F. Hutton & Co.,* 750 F.Supp. 1109, 1112 (M.D.Fla.1990) (quoting *Vigman v. Community Nat. Bank & Trust Co.,* 635 F.2d 455 (5th Cir.1981)). "[Q]uestions of notice and due diligence are particularly suited for a jury's consideration." *Kennedy v. Tallant,*

710 F.2d 711, 716 (11th Cir.1983). With respect to the factual issue of due diligence, courts must look to the state of mind of the Plaintiff shareholder. *Durham v. Business Management Associates*, 847 F.2d 1505, 1509 (11th Cir.1988). Plaintiffs are not charged with inquiry until they knew or should have known that the Defendant acted with the requisite scienter. *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir.1997). The Defendant bears the burdens of production and persuasion as to a statute of limitations defense. *Smith v. Duff and Phelps, Inc.*, 5 F.3d 488, 492, n. 9 (11th Cir.1993).

In the present case, Defendants assert that Plaintiffs' First Amended Complaint demonstrates that they were on "inquiry notice" no later than December 1996, and therefore, the claims filed on August 17, 1998 are barred. Defendants cite numerous cases that stand for the proposition that inquiry notice is presumed when the Plaintiffs have knowledge of enough facts to create suspicion of a violation. Although the Court finds the Defendants' argument persuasive given the factual allegations in the Plaintiffs' Amended Complaint, this Court stated in *Knight v. E.F. Hutton & Co., Inc.*, "[t]hat concept of due diligence (discovering facts that would provide knowledge of a violation) is not a rigid standard, but depends on the facts of each individual case." 750 F.Supp. at 1112 (citing *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5th Cir.1967)). In *Knight*, this Court held that the Plaintiff's good-faith, albeit ambiguous, assertion that she did not discover the alleged fraud before the statute of limitations would have run, created a jury question as to whether due diligence would have led her to discover the facts before the statute of limitations had run. "Such as issue cannot be resolved on a motion to dismiss." *Knight*, 750 F.Supp. at 1112.

Defendants also allege that the Plaintiffs' First Amended Complaint does not "relate back" to the date of the initial pleading. This Court finds that it does relate back. In order for Plaintiffs' First Amended Complaint to relate back to the filing of the original Complaint, the allegations need only to arise from the same conduct, transaction, or occurrence. Fed.R.Civ.P. 15(c)(2). In the present case, there are no new claims in the First Amended Complaint, and each allega-tion in the initial pleading is only further explained. Defendants allege that the Plaintiffs assert a "new" common law fraud claim in their First Amended Complaint. However, Plaintiffs' common law fraud claim is based upon the same facts as their securities fraud claim under 10(b) of the Exchange Act and Rule 10b–5. It is sufficient to state that Plaintiffs have also met the pleading requirements for statute of limitations purposes, and therefore will survive on the Motion to Dismiss based on the Defendants' allegation that all of the claims are time-barred. Accordingly, it is

**ORDERED** that Defendants' Motions to Dismiss Count I and II of the First Amended Complaint (Dkts.10, 12) are **DENIED**.