In re **CATALINA MARKETING CORP. SECURITIES LITIGATION,**

No. 8:03–CV–1582–27TBM.

United States District Court, M.D. Florida.

March 31, 2005.

---

Andrei Rado, Steven G. Schulman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, Jack G. Fruchter, Fruchter & Twersky, Christopher S. Hinton, Gregory Mark Nespole, Wolf, Haldenstein, Adler, Freeman & Herz, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz, LLP, New York, NY, Maya Saxena, Christopher S. Jones, Joseph E. White, III, Milberg, Weiss, Bershad & Schulman LLP, Jack E. Reise, Paul J. Geller, Jonathan M. Stein, Geller Rudman, PLLC, Kenneth J. Vianale, Vianale & Vianale LLP, Boca Raton, FL, Andrew Brown, Darren J. Robbins, Elizabeth J. Arleo, William S. Lerach, Lerach Coughlin Stoia & Robbins LLP, San Diego, CA, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, David A. Rosenfeld, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Samuel H. Rudman, Geller Rudman, PLLC, Melville, NY, Karen Hanson Riebel, Richard A. Lockridge, Lockridge, Grindal, Nauen P.L.L.P., Minneapolis, MN, for Plaintiffs.

Michael L. Chapman, Holland & Knight, LLP, Tampa, FL, Tracy A. Nichols, Louise M. Brais, Holland & Knight, LLP, Miami, FL, for Defendants.

## ORDER ON MOTIONS TO DISMISS

WHITTEMORE, District Judge.

**BEFORE THE COURT** are Defendant Catalina Marketing Corporation's Motion to Dismiss (Dkt.56), Defendants Wolf and Granger's Motion to Dismiss (Dkt.54), Plaintiffs' Opposition to Catalina Marketing Corporation's Motion to Dismiss (Dkt.72), and Plaintiffs' Opposition to Wolf and Granger's Motion to Dismiss (Dkt.71).

Plaintiffs filed their Consolidated Amended Class Action Complaint (Dkt.46) alleging violations of §§ 10(b) and 20(a) of the Exchange Act. Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6), as well as the Private Securities Litigation Reform Act ("PSLRA"). Defendants contend that Plaintiffs' allegations of scienter and fraud fail to meet the requisite level of particularity and that certain of the challenged statements are non-actionable under the safe-harbor provision of the PSLRA.

### Factual Background

Defendant Catalina Marketing Corporation is a targeted marketing company for consumer goods and pharmaceutical companies. In the late 1990s, Catalina was an aggressive growth company, posting revenue increases of 30% or more per year. Because of its rapid and sustained growth, its stock was consistently rated a "strong buy." (Dkt. 46 ¶ 2) Plaintiffs allege that by 1999 Catalina's core business had reached market saturation, and the compa-

ny needed new avenues to maintain its growth. (Dkt. 46 ¶ 3) In essence, Plaintiffs' claim is that Catalina publicly touted new operations as a continuing source of rapid growth with knowledge that these operations would not yield revenue increases for some time, if ever, and manipulated their accounting practices to bolster their promises, concealing the true state of the company's finances.

In large part, Plaintiffs rely on Catalina's restatements of its financial results from 2000, 2001, 2002 and 2003. In conjunction with the restatements, Catalina admitted to accounting practices that were not in accordance with Generally Accepted Accounting Principles (GAAP) or with internal company policy. (Dkt. 46 ¶¶ 36–37) Plaintiffs also rely on statements from several former Catalina employees that the accounting irregularities and misleading public statements were "so well known within the Company that it eventually became a joke among Catalina employees." (Dkt. 46 ¶ 50).

### Applicable Standards

A court may grant a motion to dismiss "only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir.2004) (internal quotation omitted). The court will accept as true all well pled factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In considering a motion to dismiss, the court is generally confined to examining the four corners of the complaint, but the court may take judicial notice of relevant documents publicly filed with the Securities Exchange Commission ("SEC"). *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir.1999). The threshold is "exceedingly low" for a com-

plaint to survive a motion to dismiss for failure to state a claim. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir.2003).

Notwithstanding the low threshold for surviving a motion to dismiss, Congress imposed heightened pleading requirements for claims alleging violations of section 10(b) and Rule 10b–5 through passage of the PSLRA. 15 U.S.C. § 78u–4(b)(1); *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir.1999). To state a cause of action under Section 10(b) or Rule 10b–5, plaintiffs are required to allege "(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss." *Theoharous v. Fong*, 256 F.3d 1219, 1224 (11th Cir.2001)(*internal citation omitted*). In the Complaint, Plaintiffs must "specify each statement alleged to have been misleading, [and the] reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1).

The PSLRA requires that scienter be pled with particularity. With respect to each act or omission, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). In the Eleventh Circuit, "a complaint alleging with particularity that a defendant acted with a severely reckless state of mind" states a claim under the PSLRA. *Bryant*, 187 F.3d at 1283. Severe recklessness includes "highly unreasonable omissions or misrepresentations" that involve "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* at 1282, n. 18 (*quoting McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989)). Scien-

ter may be inferred from the aggregation of all alleged particularized facts in the complaint. *Phillips v. Scientific–Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir.2004).

Further, under Fed.R.Civ.P. 9(b), a plaintiff must allege fraud with particularity. Rule 9(b) requires a plaintiff to allege the precise statements, documents or representations made; the time, place and person responsible for the statements; the content and manner in which the statements misled plaintiff and what defendant gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir.1997).

■ Finally, the Defendants' efforts to recast the factual allegations, drawing inferences to their benefit, are inapposite and will not be considered at this stage. *See, e.g., In re Sykes Enterprises*, No. 8:00cv212, 2001 WL 964160 at *2 (M.D.Fla. March 7, 2001). The PSLRA did not alter the required presumption that the court "give Plaintiffs, not Defendants, the benefit of every favorable inference that can be drawn from their allegations." *Id.*

### Discussion

#### Plaintiffs' Allegations of Scienter Are Sufficient

■ Defendants first challenge the sufficiency of Plaintiffs' scienter allegations. This challenge fails, as Plaintiffs have pled allegations giving rise to strong inference that all Defendants acted with, at least, severe recklessness.

■ *Scientific–Atlanta* requires the scienter allegations to be considered in the aggregate. Thus, the scienter allegations relating to each claimed misstatement must be viewed in conjunction with the Plaintiffs' overarching allegations that (1) the accounting regularities and revenue inflation schemes were well known throughout the company, (2) Catalina executives, including the named Defendants, had access to internal information demonstrating the falsity of the public statements and were confronted by employees about the misstatements, (3) seven high-level executives, including Defendant Granger, left the company in the midst of the investigations and disclosures, and (4) suspicious insider trading occurred, including by the named Defendants. Each of the above allegations supports an inference of scienter.

■ Defendants first argue that the Complaint does not adequately allege scienter as to Catalina's failure to properly account for the impairment to intangible assets resulting from the loss of its U.K. operation's largest contract. This failure resulted in the restatement of Catalina's financials for 2000 and the disclosure that Catalina had overstated its "income from operations by 43% and earnings per share by 56%." (Dkt. 46 ¶ 76) The sheer size of this restatement supports an inference of scienter. *See, e.g., Cheney v. Cyberguard*, 2000 WL 1140306 at *6 (S.D.Fla. July 31, 2000); *Zuckerman v. Smart Choice Auto. Group, Inc.*, No. 6:99–CV–237–ORL–28A, 2000 WL 33996254 at *2 (M.D.Fla., Aug. 29, 2000)("sheer magnitude" of financial restatement can suggest recklessness sufficient to constitute scienter.).

Plaintiffs allege that Defendants publicly "tout[ed] the success of Catalina U.K." while "failing to disclose that a material contract in the U.K. which constituted a significant portion of Catalina U.K.'s revenues had been canceled." (Dkt. 46 ¶ 72). Catalina failed to disclose the loss of its largest European customer for more than a year (Dkt. 46 ¶ 73), all the while publicly expressing confidence in the European operations. (Dkt. 46 ¶¶ 65, 68, 69, 72) Some of these statements are attributed directly to Defendant Granger. (Dkt. 46 ¶ 68)

Defendants argue that Plaintiffs' allegations amount to nothing more than "fraud

by hindsight." (Dkt. 56 at 12.) This argument ignores that Plaintiffs do not rely solely on the GAAP violations and resulting restatement, but also on the contemporaneous statements praising the success of Catalina U.K. while simultaneously failing to disclose the loss of its largest contract Plaintiffs have sufficiently alleged scienter on the part of all Defendants as to the misleading statements related to Catalina U.K.

Defendants also challenge whether the Complaint sufficiently alleges scienter as to the revenue recognition issues related to Catalina's subsidiary, Catalina Health Resources ("CHR"), revealed in the restatements of Catalina's 2001, 2002 and 2003 financials. Again, reading these allegations in light of the Plaintiffs' overarching scienter allegations, Defendants' argument fails.

Plaintiffs describe two methods by which Catalina manipulated CHR's financial statements, the overprint scheme and the revenue timing scheme. In the overprint scheme, which Plaintiffs allege was created by Defendant Granger, the sales force would print more ads than required by contract to inflate quarterly revenue figures. (Dkt. 46 ¶¶ 39–40) The Complaint includes quotes from several former employees identified by job title indicating that the intent of the overprint scheme was to " 'fudge' the numbers to meet quarterly estimates" (Dkt. 46 ¶ 38) and explaining that it was a "shell game" in which "you project up based upon the number of coupons you're going to trigger and don't adjust down until later" (Dkt. 46 ¶ 41). The Complaint alleges that Defendant Wolf "established the 'timing' policy" under which Catalina would prematurely recognize revenue before actually servicing the clients. (Dkt. 46 ¶ 45)

Plaintiffs further allege that Defendants had access to internal forecasts and the company's financial data, including weekly and monthly sales projections and results, that indicated Catalina could not meet the projected revenues. (Dkt. 46 ¶¶ 43, 46) Plaintiffs allege that the Defendants were "regularly confronted with Catalina's declining sales figures through attending regular meetings, by receiving several different types of internal forecasting reports, ... and by face-to-face meetings with senior level management employees who personally warned Defendants of the impending second quarter 2002 earnings miss." (Dkt. 46 ¶ 47) Plaintiffs contend that in spite of the information presented to Defendants, Defendants continued to issue public statements that Catalina's rapid growth would continue. Plaintiffs allege that these statements often touted the performance of CHR, crediting CHR for revenue growth and dubbing it a "catalyst" of Catalina's continued strong performance. (Dkt. 46 ¶¶ 98–118)

The restatements of Catalina's 2001, 2002 and 2003 financials indicated that the revenue recognition practices at CHR violated both GAAP and the company's internal policies. That the accounting irregularities identified in the restatements worked to support Defendants' misleading claims about CHR's growth and profitability gives rise to a strong inference of scienter.

When viewed in the aggregate, Plaintiffs have sufficiently alleged scienter as to all Defendants. Defendants cannot therefore succeed on their motions to dismiss on that ground.

***Plaintiffs Allege Fraud with Sufficient Particularity***

Under Fed.R.Civ.P. 9(b), Plaintiffs' Complaint "need only provide a reasonable delineation of the underlying acts and transactions constituting the fraud." *Anderson v. Transglobe Energy Corp.*, 35 F.Supp.2d 1363, 1370 (M.D.Fla.1999). Defendants argue that Plaintiffs' Complaint is

insufficiently particular in part because "only seven of the 264 paragraphs in their Amended Complaint attempt to add facts beyond those disclosed by the Company in describing the restatement." (Dkt. 56 at 13) In effect, Defendants are asserting that Plaintiffs are not entitled to rely on Defendants own *admitted* accounting irregularities. Defendants offer no support for that position. To rely on the disclosed accounting irregularities, Plaintiffs must allege additional facts to show that Catalina engaged in the accounting practices intentionally or recklessly, and, as explained above, they have done so adequately.

Plaintiffs have also alleged several specific revenue-recognition accounting practices used by Defendants to manipulate their financial statements to support their misleading public claims. In each case, Plaintiffs have described the scheme in detail and identified at least one executive and one or more customers involved. Plaintiffs have therefore alleged accounting fraud with sufficient particularity.

### The PSLRA "Safe Harbor" Provision Is Inapplicable

██ The safe harbor provisions of the PSLRA provide that certain forward-looking statements concerning a company's projected future performance are not actionable under § 10(b) or Rule 10(b)(5). 15 U.S.C. § 78u–5. The safe harbor does not apply, however, to forward-looking statements made with "actual knowledge ... that the statement was false or misleading." 15 U.S.C. § 78u–5(c)(1)(B). Plaintiffs Complaint contains allegations that:

- Catalina executives had access to internal data and forecasts that belied the public statements
- Catalina engaged in accounting fraud to manipulate the financial statements to support its public claims that CHR was a high-growth subsidiary;

- Catalina specifically pointed to European operations as a source of revenue growth knowing that it had lost its largest contract.
- "the fact that Catalina's public guidance had little relation to internal financial data was so well known within the company that it eventually became a joke among Catalina employees" (¶ 50);

Plaintiffs have therefore pled sufficient facts to give rise to a strong inference that Defendants had actual knowledge that the forward-looking statements were false or misleading and the safe harbor provision is not applicable.

### Plaintiffs State a Claim under § 20(a) Against Defendants Granger and Wolf

Defendants Granger and Wolf move to dismiss Count II of the Complaint, in which Plaintiffs assert that they are liable as controlling persons under § 20(a) of the Exchange Act. Defendants Granger and Wolf contend only that they cannot be subject to control person liability because "Plaintiffs have failed to plead the necessary predicate liability under Section 10(b)" but do not dispute that they are controlling persons. As the Court has concluded that the Complaint states a claim against Catalina under § 10(b), Defendants' motion to dismiss Count II fails.

Accordingly, Defendants' motions to dismiss Plaintiffs' Consolidated Amended Complaint are **DENIED.**

DONE AND ORDERED.