John CASELLA; Joan Casella,
Plaintiffs–Appellants,

v.

William WEBB; Private Ledger, Anita
Chalmers dba Private Ledger
Financial Services, Defendants,

and

Anita Chalmers, aka Anita Webb,
Defendant–Appellee.

No. 87–6234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1988.

Decided Aug. 25, 1989.

Michael N. Stafford, Henry Yekikian, O'Rourke, Stafford & Allan, Glendale, Cal., for plaintiffs-appellants.

Brian Ray Hodge, Jett & Laquer, Pasadena, Cal., for defendants-appellees.

Before BROWNING, NELSON and CANBY, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

John and Joan Casella appeal the district court's summary judgment for Anita Chalmers in an action alleging Chalmers' material misrepresentations induced them to purchase interests in a limited partnership, in violation of section 12(2) of the 1933 Securities Act, 15 U.S.C. § 77l(2), and of the common law prohibition against fraud.

### I.

The Casellas bought shares in a real estate limited partnership known as Hondo House, Ltd., allegedly in reliance on the following false representations by Chalmers: (1) Hondo House "was qualified with [the] IRS as an IRS approved tax shelter;" (2) if the Casellas invested $41,000.00 over a three-year period to purchase limited partnership interests in Hondo House they could obtain an income tax credit in an amount greater than their investment; (3) after "a reasonable amount of time," the Casellas "would realize a return of their original investment plus a profit in that

Hondo House was a secure investment, a sure thing." [1] Chalmers denies making such representations.

The Casellas took tax deductions in 1983 and 1984 based on the Hondo House investment. The IRS did not challenge these deductions, but subsequently informed the Casellas the limited partnership was not an approved tax shelter. Hondo House filed for bankruptcy.

█ The Casellas assert four causes of action based on the alleged misrepresentations, two of which are properly before us on appeal: violation of section 12(2) of the Securities Act of 1933 and common law fraud.[2] The district court granted summary judgment on the section 12(2) claim, holding (1) description of the investment in Hondo House as a "sure thing" was not a material misrepresentation of fact but mere puffery; (2) Casellas' losses were not caused by the other alleged misrepresentation, but by Hondo House's bankruptcy; and (3) the Casellas had constructive knowledge of the risks because they were

disclosed in the offering memorandum. The court granted summary judgment on the pendent common law claim on the same grounds.[3] We reverse and remand.[4]

## II.

█ We consider first whether the representation that the investment in Hondo House partnership interests was a "sure thing" was actionable under section 12(2).

Section 12(2) applies to misrepresentations of "material fact." [5] The test for materiality is "whether the existence or non-existence of the fact in question is a matter to which a reasonable man would attach importance in determining his choice of action." *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.1982). Materiality may be determined summarily "only if the established omissions or misstatements are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality.'" *Anderson v. Aurotek*, 774

1. The Casellas sued William Webb on the same grounds but have not appealed the summary judgment in favor of Webb.

2. The Casellas alleged violations of § 12(1) of the 1933 Act and § 25401 of the California Corporations Code. The district court dismissed the first as time-barred and the second for lack of jurisdiction. The Casellas do not challenge the first ruling. They cannot challenge the second since they failed to indicate an intention to do so in their notice of appeal, as required by Fed.R.App.P. 3(c). Intent to appeal this issue cannot be fairly inferred from the notice of appeal, which was specifically limited to the Casellas' "first, second and fourth causes of action." The failure was not harmless; neither side briefed the merits of the omitted issue. *See Roberts v. College of the Desert*, 870 F.2d 1411, 1418–19 (9th Cir.1988).

3. Both parties assume the issues in the statutory and common law claims are the same. For the purposes of this appeal we make the same assumption.

4. We reject Chalmers contention that the Casellas failed to discharge their evidentiary burden in opposing the motion for summary judgment. Mr. Casella submitted a sworn declaration charging Chalmers with the misrepresentations alleged in the complaint and reiterated the Casellas' reliance on these statements. The allegations of the complaint and declaration were sufficiently specific, given the nature of this

case: The Casellas described in detail what was said to them, by whom, and the approximate time period in which these statements were made. This satisfied the requirement of Fed.R. Civ.P. 56(e), that plaintiffs go beyond the bare allegations in their pleadings to defeat summary judgment. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir.1985).

5. As codified, § 12(2) provides in relevant part: Any person who—

. . . . .

(2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omissions, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(2).

F.2d 927, 931 (9th Cir.1985) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976)).

Chalmers argues that her alleged representation that the Casella's investment in Hondo House was "a sure thing" meets this requirement, for no reasonable person would base an investment on such a statement. The Casellas argue the statement is to be evaluated in context, and in this case was coupled with, and served to emphasize, specific misrepresentations of fact as to the future profitability of Hondo House and the tax benefits that would flow from the investment, which "were unquestionably material." *Anderson*, 774 F.2d at 931. We agree. Statements made in the course of an oral presentation "cannot be considered in isolation," but must be viewed "in the context of the total presentation." *Hughes v. Dempsey–Tegeler & Co.*, 534 F.2d 156, 176 (9th Cir.1976). What might be innocuous "puffery" or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation. *G & M, Inc. v. Newbern*, 488 F.2d 742, 745–46 (9th Cir.1973).

### III.

It was error to grant summary judgment for Chalmers as to the remaining alleged misrepresentations on the ground that the Casellas failed to demonstrate these misrepresentations caused them economic harm.

The district court adopted Chalmers' argument that parties bringing suit under section 12(2) must prove not only that "the violations in question caused the plaintiff[s] to engage in the transaction," but also that "the misrepresentations or omissions caused the harm," *Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 773 (9th Cir.1984), and concluded a violation of section 12(2) had not been established because any economic loss the Casellas may have suffered was caused by the bankruptcy of Hondo House rather than the alleged misrepresentations regarding the profitability and tax benefits of the investment.[6]

The language of Section 12(2) clearly states that whenever a security is sold "by means of" a misstatement or omission, the purchaser may tender the security to the seller and recover the purchase price plus interest, less income, or, if the purchaser no longer owns the security, may recover equivalent rescissory damages. *Randall v. Loftsgaarden*, 478 U.S. 647, 655–56, 106 S.Ct. 3143, 3148–49, 92 L.Ed.2d 525 (1986).[7] If the misrepresentations were material, the Casellas were entitled to restitution whether or not the misrepresentations caused the bankruptcy of Hondo House, or somehow defeated the Casellas' claim for tax deductions. In Professor Loss' words, "[t]he buyer need not show any causal connection between the misrepresentation and his damage; indeed, he need not even show that he has been damaged." L. Loss, *Fundamentals of Securities Regulation* 873 (1988).[8] Section 12(2) "is a broad anti-

---

**6.** Chalmers argues that because the IRS has not challenged the Hondo House deduction the court should affirm the judgment on the ground Chalmers' representation as to IRS approval has not been shown to be false. The misrepresentation the Casellas allege, however, is that before purchasing the investment they were told the IRS had *already approved* Hondo House as a tax shelter. The lack of a subsequent IRS challenge is irrelevant to whether the IRS had given "pre-approval" to the deduction.

**7.** As the Supreme Court explained:

Congress chose a rescissory remedy when it enacted § 12(2) in order to deter prospectus fraud and encourage full disclosure as well as to make investors whole. Indeed, by enabling the victims of prospectus fraud to demand

rescission upon tender of the security, Congress shifted the risk of an intervening decline in the value of the security to defendants, whether or not that decline was actually caused by the fraud. Thus, rescission adds an additional measure of deterrence as compared to a purely compensatory measure of damages.

*Randall*, 478 U.S. at 659, 106 S.Ct. at 3150 (citations omitted).

**8.** The district court and Chalmers mistakenly rely on cases involving Rule 10b–5 rather than § 12(2). *Compare In re Financial Corp. of America Shareholder Litig.*, 796 F.2d 1126, 1130 (9th Cir.1986) (Rule 10b–5 plaintiff must prove not only transaction causation but also loss causation); *Bennett v. United States Trust Co.*, 770

fraud measure," *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 344 (2d Cir.1987), intended to provide a heightened deterrent against sellers who make misrepresentations by rendering tainted transactions voidable at the option of the defrauded purchaser regardless of whether the loss is due to the fraud or to a general market decline. *See Randall*, 478 U.S. at 659, 106 S.Ct. at 3150.

## IV.

It was also error to grant summary judgment against the Casellas on the ground they had constructive notice the alleged misrepresentations were not true.

■ The Offering Memorandum Chalmers provided to the Casellas stated Hondo House limited partnership interests were a risky investment, the IRS had not approved and would probably challenge some of the deductions, and buyers should not rely on oral descriptions of the security. The Casellas asserted they relied upon Chalmers' contrary oral representations and did not read the Offering Memorandum or have actual knowledge of its contents. The district court held the Casellas "are presumed to know the information contained in the Offering Memorandum and cannot rely on oral statements to the contrary."

■ Constructive knowledge cannot bar a purchaser's recovery under section 12(2). Section 12(2) on its face treats the state of mind of sellers and purchasers differently in this respect. Sellers are charged with constructive knowledge under section 12(2), but purchasers are not. Sellers may defeat recovery only by proving

they did not know "and in the exercise of reasonable care could not have known" of the untruth or omission; purchasers may recover unless they have actual knowledge of the untruth or omission. Sellers may be liable for misrepresentations they did not know were false if they should have known it; purchasers need only establish they did not know the statements were untrue. "Constructive knowledge, which plaintiff might have acquired by exercising ordinary care, will not preclude him from recovery.... [C]ontributory negligence has been rejected as a defense under § 12(2)." 3 A. Bromberg & L. Lowenfels, *Securities Fraud and Commodities Fraud* §. 8.4(317), at 204.14–204.15 (1986). "A plaintiff under § 12(2) is not required to prove due diligence. All that is required is ignorance of the untruth or omission." *Sanders v. John Nuveen & Co.*, 619 F.2d 1222, 1229 (7th Cir.1980) (citation omitted); *accord Alton Box Bd. Co. v. Goldman, Sachs & Co.*, 560 F.2d 916, 919 n. 3 (8th Cir.1977); *Hill York Corp v. American Int'l Franchises, Inc.*, 448 F.2d 680, 696 (5th Cir.1971); *cf. Gilbert v. Nixon*, 429 F.2d 348, 356 (10th Cir.1970).[9]

REVERSED and REMANDED.

F.2d 308, 313 (2d Cir.1985) (same) *with Randall*, 478 U.S. at 659, 106 S.Ct. at 3150 (section 12(2) plaintiff need not prove loss causation); *Wilson v. Ruffa & Hanover, P.C.*, 872 F.2d 1124, 1126 (2d Cir.1989) (same).

**9.** Again Chalmers mistakenly relies on cases construing Rule 10b–5 rather than section 12(2). *Compare Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516–19 (10th Cir.1983) (barring 10b–5 recovery where buyer possessed constructive knowledge based on facts in prospectus *with* H. Bloomenthal, *Securities Law Handbook* § 11.05, at 283 (1987–88) ("in contrast to Rule 10b–5 ... there is no requirement [under § 12(2) ] that plaintiff have exercised care") (footnote omitted).