**Patricia J. YOUNG; et al., Plaintiffs–Appellants,**

**Frederick Konigsbreg; et al., Appellants,**

and

**Raul Pupo; et al., Plaintiffs,**

v.

**Timothy A. DREISBACH; et al., Defendants–Appellees.**

No. 04–16202.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2006.

Filed May 26, 2006.

Rawlinson, Circuit Judge, concurred in the result.

Andrew Schatz, Esq., Jeffrey S. Nobel, Esq., Schatz & Nobel, PC, Hartford, CT, Christopher Lovell, Esq., Merrick Scott

Rayle, Esq., Lovell Stewart Halebian LP, for Plaintiffs–Appellants.

Patrick A. Klingman, for Appellants.

Elizabeth W. Walker, Esq., Ronald K. Giller, Esq., Dewey Ballantine LLP, Daniel P. Lefler, Esq., David A. Siegel, Esq., Richard H. Zelichov, Esq., Irell & Manella, LLP, Los Angeles, CA, Mark E. Friedman, Esq., Laura C. Taylor, Esq., Garvey Schubert & Barer, Christian Hatfield, Portland, OR, Samuel R. Miller, Esq., Folger Levin & Kahn, LLP, William F. Alderman, Esq., Peter E. Root, Esq., Orrick Herrington & Sutcliffe, LLP, San Francisco, CA, for Defendants–Appellees.

Before: BERZON, RAWLINSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Appellants are a proposed class of individuals who purchased Metricom, Inc. stock between June 21, 1999 and July 2, 2001. Appellees include Metricom's president (Dreisbach) and directors (Derrickson and Savoy), along with its largest shareholder (Vulcan Ventures, Inc. or "Vulcan") and the underwriters of Metricom's February 2000 stock offering (Lehman Bros., Inc., Salomon Smith Barney, Inc., Merrill Lynch et al., and J.P. Morgan Securities). Appellants' second amended complaint ("Complaint") alleges that appellees violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C.S. §§ 78j(b) & 78t(a)), and Rule 10b–5 (17 C.F.R. § 240.10b–5) ("the 1934 Act"), and §§ 11(a), 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k & 77l(a)(2)) ("the 1933 Act"), by failing to disclose material information about the strategic rela-

tionship between Metricom and MCI WorldCom Communications, Inc. ("WorldCom"). Appellants challenge the district court's dismissal of the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. We affirm.

We review de novo the district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 619 (9th Cir.2004). We evaluate the complaint de novo to determine whether it states a claim upon which relief could be granted. *Gonzalez v. Metropolitan Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir.1999). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to plaintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996). Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss. *Id.*

The Private Securities Litigation Reform Act of 1995 ("PSLRA") established uniform and stringent pleading requirements for securities fraud actions, and sought "to put an end to the practice of pleading 'fraud by hindsight.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir.1999). The PSLRA heightened the pleading requirements in private securities fraud litigation by requiring that the complaint plead both falsity and scienter with particularity. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir.2002). If the complaint does not satisfy these pleading requirements, the court must dismiss the complaint upon motion of the defendant. 15 U.S.C. § 78u–4(b)(3)(A).

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

### Overview of Appellants' Claims [1]

Appellants allege that appellees violated federal securities laws when they failed to disclose (1) an alleged "Repayment Arrangement" between Metricom and World-Com, (2) the negotiations that preceded the execution of the GSA, and (3) the GSA itself, after it was executed. Appellants contend that appellees fraudulently concealed this information from investors in order to inflate the purchase price of Metricom stock.

### The Repayment Arrangement

■ The Repayment Arrangement is at the heart of appellants' claims. As we read the Complaint, appellants allege that although Metricom and WorldCom did not execute the GSA until October 2000, they had an unwritten agreement to abide by and perform under its terms as early as November 1999. Appellants refer to this unwritten agreement as the "Repayment Arrangement." [2]

Appellants contend that under the Repayment Arrangement, Metricom agreed to purchase a guaranteed minimum number of circuits and related telecommunications services from WorldCom throughout the Ricochet build-out and launch. If Metricom failed to meet its obligations under the Repayment Arrangement, "a Draconian termination liability clause caused the entire stream of payments to accelerate and become immediately due and payable." (Complaint, ¶ 53) Appellants allege that

the termination liability clause was intended effectively to guaranty that Metricom would repay WorldCom its original $300 million investment.

The existence of the alleged Repayment Arrangement necessarily contemplates that the material terms of the GSA were settled as of November 1999. Multiple drafts of the GSA that were attached to the Complaint establish, however, that the material terms were not settled; rather, they changed markedly over the course of several months of negotiations.[3] Additionally, each of the drafts were presented as an "offer" that expressly required Metricom's acceptance on or before the specified "acceptance deadline" before an agreement could be formed. The fact that Metricom and WorldCom continued to exchange drafts and offers before and after the February 2000 offering, also demonstrates that the material terms of the GSA were not finalized. Moreover, by its express terms, the GSA was not effective until fully executed. The documents attached to the Complaint indicate, and appellants concede, that the GSA was not fully executed until October 3, 2000.

Accordingly, we decline to accept as true appellants' allegation that the Repayment Arrangement existed. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001) (noting the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit). Thus, appellants cannot state a

---

1. Since the parties are familiar with the facts, we recount them only to the extent necessary to explain our decision.

2. We could find no reference in the Complaint to a "Repayment Arrangement;" rather, this appears to be a label that appellants' use in their briefs to describe the alleged unwritten agreement between the parties.

3. For example the draft (allegedly circulated on December 8, 1999) attached as Exhibit G

to the Complaint set the annual minimum usage charge at $60 million for each of the five contract years, whereas the executed GSA set a graduated schedule, starting with $20 million the first year and ending with $120 million the fifth year. Also, the draft that was allegedly circulated on February 13, 2000, one week after the public offering, contained "detariffing" provisions, which were eliminated entirely in the executed GSA.

claim under federal securities law based on appellees' failure to disclose the alleged Repayment Arrangement.

## Appellants' Claims under the 1933 and 1934 Acts

Sections 11 and 12 of the 1933 Act apply only to material misrepresentations or omissions within the registration statement or prospectus (collectively "the Prospectus"). 15 U.S.C. §§ 77k and 77l(a)(2). Section 15 imposes "control person" liability on individuals who control any person found liable for violations of §§ 11 and 12. 15 U.S.C. § 77o.

In order to state a claim under § 10 of the 1934 Act and Rule 10b–5, a plaintiff must allege (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss. *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir.1999).[4] The misstatement or omission complained of must be misleading; in the case of an omission, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

The duty to disclose extends only to material information. *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir.1992). An omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) (defining materiality in the context of section 14); *see also Levinson*, 485 U.S. at 231–32, 108

S.Ct. 978 (applying *TSC* to sections 11 and 12 of the 1933 Act).

*Alleged Misrepresentations*

■ The Complaint alleges that appellants paid inflated prices for Metricom stock because appellees failed to disclose the Repayment Arrangement, the negotiations regarding the GSA, and the existence of the GSA after it was executed. For the reasons previously stated, appellees' failure to disclose the alleged Repayment Arrangement is not actionable. Moreover, appellants' causation claims are contradicted by documents that were properly before the district court. Specifically, Metricom's SEC filings thoroughly informed investors about the expenditures and obligations that Metricom had undertaken to deploy Ricochet, and made clear that Metricom would not receive revenues under the Reseller Agreement until the network was built-out according to certain performance standards.

Additionally, on June 21, 1999, Metricom disclosed in both a press release and the Reseller Agreement, that it expected to pay WorldCom to use its data communications network, but that the actual terms had not been finalized. The Prospectus for the February 2000 offering emphasized that the high-speed network was not yet built and that Metricom would generate significant losses for the next several years. In addition, the Prospectus included 15 pages of detailed risk disclosures regarding the expenses and losses Metricom expected to incur and suffer. Similarly, the 1999 Form 10–K, filed on March 24, 2000, included a lengthy particularized discussion of risk disclosures, reiterating that Metricom would require additional cash resources of approximately $1 billion to

---

4. Section 20 of the 1934 Act imposes joint and several liability on persons who directly or indirectly control a violator of securities laws. 15 U.S.C. § 78t(a). Violation of § 20 is predicated on a primary violation under the 1934 Act. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir.1999).

complete the three-phase deployment of the high-speed network, and that World-Com could terminate the Reseller Agreement if Metricom breached its material obligations thereunder.

We note that the underutilization and termination provisions of the GSA—the key provisions of which appellants claim investors should have been informed—could not, by their terms, have become applicable until well after the GSA had been executed by both parties in October 2000. Appellants have not demonstrated how or why disclosing the ongoing GSA negotiations would have "significantly altered the 'total mix' of information made available" to reasonable investors. *Levinson,* 485 U.S. at 231–32, 108 S.Ct. 978.

Furthermore, the GSA contradicts appellants' suggestion that Metricom was unconditionally obligated to make $350 million in payments to WorldCom under the GSA, or that WorldCom's $300 million investment was "guaranteed." The GSA does not contain any provision purporting to create a security interest for the benefit of WorldCom.

Appellants also allege that various public statements made after the GSA was executed were misleading because they deliberately concealed that (1) the San Diego and Atlanta launches pertained solely to resellers other than WorldCom;[5] (2) Metricom could not launch the 11 specified Phase I cities on time; (3) the GSA had been executed; and (4) Metricom was behind in deployment and had not been certified as "commercially ready" in a single city, in breach of the Reseller Agreement.

■ Appellants' allegation that appellees failed to disclose that the WorldCom launches were late is contradicted by the record before us. Metricom made numerous public statements throughout 2000 explaining the ongoing significant delays due to protracted zoning and utility contract negotiations, world wide component shortages, cash shortages, and problems with third-party vendors that were beyond Metricom's control.[6] Moreover, as the district court noted, the Complaint does not state when or where the applicable timetables were published, does not explain what state of development and/or deployment Metricom was in as of the date of each of the challenged public statements, and does not articulate how the challenged public statements were misleading. Indeed, in relying on the original deployment schedule filed as an exhibit to the Amended Reseller Agreement in November 1999, the Complaint overlooks the various changes to the schedule that were published thereafter.

We also find that the challenged press releases in October through December 2000, were not actionable factual statements. The statement that the Ricochet launch was moving forward at a "tremendous pace" was an expression of vague optimism. Although announcing that the San Diego/Atlanta launch was "ahead of schedule" may have been an exaggeration, Metricom had publicly disclosed several times that all three phases of the Ricochet launch were seriously delayed. There was therefore little chance that investors were misled by a vague statement in a press release. *See Casella v. Webb,* 883 F.2d 805, 808 (9th Cir.1989) (considering wheth-

---

**5.** Appellants suggest that appellees intended to conceal the fact that the WorldCom launches were late to avoid informing investors that Metricom may not get paid under the Reseller Agreement.

**6.** *E.g.,* January 25, 2000 Press Release; March 3, 2000 Prospectus Supplement; March 24, 2000 Form 10–K; May 12, 2000 Form 10–Q; August 14, 2000 Form 10–Q; November 13, 2000 Form 10–Q; December 22, 2000 Amended Form 10–Q.

er a "reasonable person would base an investment on such a statement"). Moreover, the record does not make clear whether "ahead of schedule" refers to the original launch schedule or a revised schedule.

Finally, we note that the SEC filings, both before and particularly after the GSA was executed, disclosed significant investment risks, cash shortages, cumulative debt, and worldwide component shortages, as well as ongoing delays in municipal and utility negotiations and the Ricochet launch itself. In light of these disclosures, the Complaint fails to demonstrate how or why the contents of the executed GSA would have "significantly altered the 'total mix' of information made available" to reasonable investors. *Levinson,* 485 U.S. at 231–32, 108 S.Ct. 978. Thus, appellants fail to establish that appellees had a duty to disclose the executed GSA. *Id.*

In light of all the foregoing, the district court properly dismissed appellants' Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

AFFIRMED.

RAWLINSON, Circuit Judge, concurring:

I concur in the result.